## GREGORY *v.* STETSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 1514. Submitted January 6, 1890. — Decided March 3, 1890.

A Circuit Court can make no decree in a suit in the absence of a party whose rights must necessarily be affected thereby.

Two attorneys representing two separate parties, delivered a promissory note to a third person as bailee, and took his receipt therefor, in which he stated that he held it subject to their joint order, and to be dealt with as they might jointly direct. One of the separate parties filed a bill in equity against the bailee to compel him to deliver up the proceeds of the note (which had been paid) without making parties to the bill the two attorneys and the other party; claiming that he was entitled to do so by reason of an award in an arbitration that had taken place by which it had been decided that he should become the owner of the note on the performance of certain conditions which he had performed.; *Held*, that they were necessary parties to the bill and that no decree could be made by the court in their absence.

THIS was a suit in equity brought in the Circuit Court of the United States for the District of Massachusetts by Charles A. Gregory, a citizen of Illinois, against William C. N. Swift and John G. Stetson, citizens of Massachusetts, for the alleged violation by Stetson of the following contract of bailment as respects the $15,000 note therein mentioned:

"BOSTON, *Dec. 24, 1886.*

"Received of Thomas H. Talbot, Esq., as attorney for Mary H. Pike, executrix of Frederic A. Pike, and of Francis A. Brooks, Esq., as attorney of Charles A. Gregory, two notes of hand made or signed by W. C. N. Swift, of New Bedford, dated April 20, 1883, one for $15,000, on two years' time, and one for $20,334.60, three years' time, payable to Charles F. Jones. Said notes are to be held by me, subject to the joint order and direction of the said Talbot and Brooks, and dealt with as they may jointly direct.

"JOHN G. STETSON."

The amended bill filed on the 30th of January, 1889, alleged that on the 10th of January, 1887, complainant filed a bill in

that court against the defendants Swift and Stetson, and one Thomas H. Talbot, and referred to that bill as in part incorporated therein. The material allegations of that bill, so far as concerns this case, were as follows : That on or about the 16th of December, 1884, complainant filed a bill in one of the state courts of Massachusetts against the defendant Swift and one Frederic A. Pike, of Calais, in the State of Maine, to obtain possession of the two notes heretofore mentioned, then in the possession of Pike, which suit was afterwards removed into the court below where it was then pending and undetermined ; that the defendants to that suit filed their respective answers to the bill, issues were joined, proofs taken and the case assigned for final hearing, but was not heard, for the reason that it was then agreed in writing between Pike and complainant to refer their controversy to the Hon. E. R. Hoar to determine the true ownership and rights of possession of the notes referred to, and in case of the death of either or both of them their respective legal representatives should be bound by the award to be made; that soon after the submission to the referee, Pike died testate, having appointed his wife, Mary A. Pike, executrix of his will, and residuary legatee of his estate, who proceeded in relation to the matter before the referee in the same manner as if the submission had been entered into by her personally ; and that the referee after hearing the parties interested made and published the following award, and delivered a copy of the same to complainant :

"The undersigned, referee in the matter submitted to him by Charles A. Gregory and Frederic A. Pike, under the submission, a copy of which is hereto annexed, having duly heard the parties, awards and determines thereon, and this is my final award in the premises as follows, to wit: That the said Pike is not entitled to detain or withhold from said Gregory the two Swift notes mentioned or described in the submission except for the purpose of securing the payment of another certain note, signed by G. W. Butterfield and Charles F. Jones, for the sum of $2437.50, dated July 26, 1883, and payable to C. H. Eaton of Calais, Me., or order, a copy of which is hereto

annexed; that upon or after the said Eaton note, or whatever sum is now due thereon with interest, as stipulated in said note, shall have been paid by the said Gregory, the said Gregory will be entitled to the possession of the two Swift notes, one of $15,000, and one of $20,334.60. He also finds and determines that upon the payment of said Eaton note by said Gregory, he will be entitled to a transfer or delivery to himself of said Eaton note, and to the benefit of any sums which may be recovered of the said Butterfield and Jones on said note. Dated at Boston, the thirtieth day of November, in the year one thousand eight hundred and eighty six.

"E. R. HOAR.

"On or before January 1, 1884, we promise to pay C. H. Eaton, or order, two thousand four hundred and thirty-seven dollars and fifty cents, with interest at the rate of one per cent per month from date. Value received.

"G. W. BUTTERFIELD.
"CHARLES F. JONES."

It was then alleged that afterwards Mrs. Pike, having examined the award which had been temporarily returned to the referee for that purpose, undertook to revoke the power under which the referee had acted, and to vacate and annul the award made by him, whereupon the referee, upon being waited upon by complainant through F. A. Brooks, his attorney, accompanied by Thomas H. Talbot, the attorney for Mrs. Pike, returned the award to complainant and gave the said notes to said attorneys, who thereupon took them to defendant Stetson, receiving from him the receipt, heretofore set out in full; that complainant on the 4th of January, 1887, in order to entitle himself to the sole and exclusive possession of the notes heretofore mentioned, paid the note of $2437.50 in favor of C. H. Eaton, mentioned in the award, whereby he became entitled to receive from the defendant Stetson the two notes referred to, the rights of Mrs. Pike and her attorney, Talbot, in and to the same thus having ceased and become of no effect; and that by an instrument in writing dated December 5, 1884, Charles F. Jones, the payee of the two notes,

transferred and assigned them to complainant, and authorized him to sue for and collect them, using the payee's name for that purpose, and to deal with them generally as his own property.

The bill in this case then alleged that the defendants Swift and Stetson each answered that bill, and that issue was duly joined upon those answers; that on the 13th of June, 1887, while the defendant Stetson was in possession of the $15,000 note by virtue of the contract heretofore set out in full, the defendant Swift filed his petition in the old equity cause of *Gregory* v. *Pike and Swift* to enjoin the suing out or levying of an execution upon any judgment that might be rendered upon the law side of the court upon that note, which had matured and had been sued upon in the name of the payee Jones, until the final determination of the rights of the parties to that equity-cause; that on the 9th of July it was ordered by the court below in the old equity cause that the defendant Stetson file the $15,000 note in the action at law of *Jones* v. *Swift,* and that upon the entry of judgment in that action the defendant Swift be directed to pay into the registry of the court the amount of that judgment, the same to be held subject to the rights of the parties claiming the note, and to abide the decision of the court in that cause; and that in obedience to those orders of court, and by the voluntary procurement of the defendant Swift, judgment was entered in the action at law against Swift on the $15,000 note, the note was delivered up by the defendant Stetson and filed with the papers in that action, and the amount of the judgment was paid by Swift to the clerk of the court below, who then claimed to hold the same "subject to the rights of the parties claiming said note and to abide the decision of the court" in the old equity cause of *Gregory* v. *Pike et al.*

The bill then alleged that all the orders and proceedings heretofore mentioned as pertaining to that old cause in equity were irregular, improper and contrary to law; that at and before the time of the passage of said orders the cause in which they were made had been abated by the death of Pike, one of the defendants thereto, which fact was suggested to the

court by complainant on the 6th of January, 1887; that complainant is entitled to the benefits of the action at law heretofore mentioned and to the proceeds of the judgment obtained therein, he having by leave of the court intervened in that action, as a claimant of the note in suit, before the entry of judgment upon it; that the amount of the judgment having been paid over to the defendant Stetson, as clerk of the court, the same was entered satisfied by him, and the money so received was deposited in bank, where it has since remained, the $15,000 note being filed in said old equity cause; and that the defendant Stetson claims to have been duly authorized by the aforesaid orders of court to deal with the note as above set forth, and to be exempted by those orders from all liability to complainant under the before mentioned receipt of December 24, 1886.

The bill prayed that the money paid by the defendant Swift to the defendant Stetson, as clerk of the court, in satisfaction of the judgment rendered on the $15,000 note, be remanded to Stetson, in his individual capacity, as if no orders, as above recited, had been passed, and that he be ordered to pay over the proceeds of that note to complainant, and for other and further relief.

Later amendments to the prayer of the bill were, that complainant be decreed to have become the sole owner of the $15,000 note prior to July 9, 1887, and that the defendant Stetson's possession of the same thereafter was that of a trustee holding for complainant's sole use and benefit; and a further prayer that if the relief sought against Stetson could not be granted, the defendant Swift be ordered and decreed to pay to complainant the amount of said $15,000 note.

The defendants filed separate demurrers to the bill, which were sustained by the court, and the bill was dismissed. *Gregory* v. *Swift,* 39 Fed. Rep. 708. The complainant thereupon prosecuted his appeal to this court.

*Mr. F. A. Brooks* for appellant.

The old equity suit against Pike had been got ready for hearing at much expense when Pike, who was not a resident

of Massachusetts, became dangerously ill. In the event of his death before rendition of judgment it was understood that the suit would be abated, and all benefit thereof lost.

Under these circumstances the cause was taken out of court, and submitted to Judge Hoar, as arbitrator, upon the evidence already taken and printed for the use of the court. It was expressly provided in the submission that it should not be affected by the decease of either party thereto, and Judge Hoar was not only made arbitrator to decide the cause, but was placed in possession of the notes themselves as a stakeholder, and he was to pass over these notes to whichever of the claimants he as arbitrator should find to be entitled thereto. After he had decided that the plaintiff, Gregory, would be entitled to said notes upon payment by him of the Eaton note, and that the testator Pike was not entitled to them, his executrix, Mrs. Pike, undertook to repudiate the award in violation of the express provisions of the submission, that the parties thereto and their assigns and legal representatives would "observe, keep and perform" the said award, when made.

The letter of Mrs. Pike's counsel, conveying notice to the arbitrator of her intended revocation of the submission, contained no statement of any reason for such revocation; but we are led to suppose that she acted in this respect under the impression that the decease of either party to a submission, before any award made, operates of itself as a revocation. This effect was, however, prevented in the case, as we suppose, by the provision introduced into the submission for that purpose. *Blundell* v. *Brettargh,* 17 Ves. 232; *Cooper* v. *Johnson,* 2 B. & Ald. 394; *Prior* v. *Hembrow,* 8 M. & W. 873; *McDougal* v. *Robertson,* 4 Bing. 435.

If it should be held that Pike's death would operate to revoke the submission, notwithstanding the clause therein intended to prevent this result, we then submit that Mrs. Pike, as executrix of her husband's will, had power to submit claims against the estate to arbitration, and that her appearance before the arbitrator in pursuance of the submission, and prosecuting the same until the publication of the award, was the adoption by her of the old submission, and was equivalent in law to the

execution by her of a new submission. *Bean* v. *Farnam,* 6 Pick. 269.

The notice given to the arbitrator by Mrs. Pike, through her attorney Harvey, December 24, 1886, for the purpose of revoking the submission, of itself imports or implies the previous existence of a submission intended to be revoked by her.

We submit, therefore, in view of all the facts and circumstances of the case, it was not the intention of the receipt given by Stetson as stakeholder that neither party should be able to get possession of the notes, though successful before the arbitrator, unless he could procure the order or direction of the other, authorizing Stetson to give them up.

If this were so, then stakeholders could never be required to perform their duty or trust to the party entitled, without the concurrence or consent of both parties; or, in other words, the losing party could always prevent any delivery of the stakes except at the end of a law-suit.

Of course we do not claim that the stakeholder should not be free to decline to deliver over the stakes, so long as he has any reasonable doubt as to who is entitled to them. He is always at liberty, in the case of conflicting claims, to bring a bill of interpleader, and in that way get a decision of the court which shall bind all parties.

*Mr. John G. Stetson,* in person, submitted on the opinion of the court below.

Mr. Justice Lamar, after stating the case as above, delivered the opinion of the court.

The bill having been dismissed by agreement, as respects the defendant Swift, the only questions in the case for our consideration are those relating to the demurrer of the defendant Stetson. That demurrer rests on ten grounds, but the court below considered only one of them, viz., the ninth one, which is as follows: "This bill is defective for want of proper parties, in that it does not make Mary H. Pike, executrix of Frederic A. Pike, Thomas H. Talbot and Francis A. Brooks, or either of them, parties thereto."

We are of opinion that the decree of the court below must stand. The rule as to who shall be made parties to a suit in equity is thus stated in Story's Eq. Pl. § 72: "It is a general rule in equity (subject to certain exceptions, which will hereafter be noticed) that all persons materially interested, either legally or beneficially, in the subject matter of a suit are to be made parties to it, either as plaintiffs or as defendants, however numerous they may be, so that there may be a complete decree, which shall bind them all. By this means, the court is enabled to make a complete decree between the parties, to prevent future litigation by taking away the necessity of a multiplicity of suits, and to make it perfectly certain that no injustice is done, either to the parties before it, or to others, who are interested in the subject matter, by a decree, which might otherwise be grounded upon a partial view only of the real merits. When all the parties are before the court, the whole case may be seen; but it may not, where all the conflicting interests are not brought out upon the pleadings by the original parties thereto." See also 1 Daniell's Chan. Pl. and Prac. 246 et seq.

In the case before us we are unable to see how any final decree could be rendered affecting the parties to the contract sued on without making them all parties to the suit. It is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it. This principle is fundamental. The allegations of the bill show that the contract sued on was made and entered into subsequently to the termination of the proceedings before the referee. By the terms of that contract the note in dispute between Mrs. Pike and the complainant was to be held by the bailee, Stetson, "subject to the joint order and direction" of their respective attorneys. It seems too plain to require argument that complainant Gregory, Mrs. Pike, Talbot, Brooks and Stetson, all had an interest in the subject matter of the contract — such an interest, too, as brings the case within the rule just announced.

The point was made in the court below, and it is also pressed here, that Mrs. Pike being a non-resident and beyond the juris-

diction of the court, it was impossible to join her as a party defendant to this suit, and that it was, therefore, unnecessary to attempt to do so. The court below ruled against the complainant on this point, and we see no error in that ruling. The general question involved therein has been before this court a number of times, and it is now well settled that, notwithstanding the statute referred to and the 47th equity rule, a Circuit Court can make no decree in a suit in the absence of a party whose rights must necessarily be affected thereby. *Shields* v. *Barrow*, 17 How. 130, 141, 142; *Coiron* v. *Millaudon*, 19 How. 113, 115, and cases there cited.

But even admitting the complainant's contention as regards the making of Mrs. Pike a party to this suit, it does not follow that Talbot and Brooks should not have been made parties. As we have shown, they had a substantial interest in the subject matter of the contract sued on, and they should have been made parties to the suit.

We see no error in the decree of the court below prejudicial to the complainant, and it is therefore

*Affirmed.*