### BOARD OF TRUSTEES OF OBERLIN COLLEGE v. BLAIR et al.

#### (Circuit Court, D. West Virginia. October 18, 1895.)

FEDERAL COURTS—JURISDICTION—DIVERSE CITIZENSHIP—ARRANGEMENT OF PARTIES.

The trustees of O. College, an Ohio corporation, filed a bill in a federal court in West Virginia against one B., as trustee and individually, M., A., P., K., and the personal representative and heirs of one G., all of whom were citizens of West Virginia, and the P. Co., a Pennsylvania corporation. It was alleged in the bill that certain land claimed by O. College and also by K. and G. had been conveyed to B., as trustee, to sell and pay over the proceeds to the college and K. and G.; that B. subsequently entered into a conspiracy with M., P., and A., who upon the death of G. had qualified as his personal representative, and, in pursuance of such conspiracy, the land having greatly increased in value in consequence of a discovery of oil, sold it to M. for much less than its value, fraudulently concealing from the trustees of the college the fact of the increase. It was also alleged that the consent of K. to such sale had been obtained upon the understanding that he was still to retain a one-fifth interest in the land, the other four-fifths being held by A., who joined in the scheme with the intent to defraud G.'s heirs, M., P., and B., the trustee, and that, after the title had been conveyed by B. to M., the land was leased by these parties through M. to the P. Co. for a bonus much larger than the price accounted for by B. to his cestuis que trustent, with a royalty on the oil taken from the land, and other rentals and payments. The bill prayed that M., B., A., P., and K. should be decreed to account for and pay over to the college, K., and the heirs of G. the sums received from the P. Co., and that the P. Co. might be required to attorn to such beneficiaries of the original trust, and pay to them the royalties and rentals under its lease. Held, that the real controversy in the suit was as to the fraud alleged to have been committed by B., A., M., P., and K., and the existence of the trust arising from such fraud, of which B. and his co-conspirators would be the trustees, and the college and the heirs of G. the beneficiaries; that in such controversy the college and the heirs of G. were, upon the one side, opposed to the other parties; that the heirs of G. were indispensable parties to the suit; and, being citizens of the same state as the parties on the opposite side, when all the parties were arranged according to their real interests, the federal court was without jurisdiction.

G. W. Farr, W. H. Miller, and T. E. Burton, for complainant.
S. D. Turner, B. M. Ambler, and W. P. Hubbard, for defendants.

GOFF, Circuit Judge.   The board of trustees of Oberlin College, a corporation under the laws of the state of Ohio, and a citizen of that state, brings this suit in the circuit court of the United States for the district of West Virginia, against J. V. Blair, as trustee and in his own right, S. B. McMillan, Henry Ash, L. W. Pearcy, T. K. Knight, and the personal representative and heirs at law of C. R. Gain, deceased, all residents of Doddridge county, in the state of West Vir-

ginia, and citizens of that state, and the South Penn Oil Company, a corporation under the laws of the state of Pennsylvania, and a citizen of said state.

The case stated by the bill is, in substance, this: The board of trustees of Oberlin College, for some years prior to the 24th day of July, 1885, claimed to own a certain tract of land containing about 300 acres, located in said county of Doddridge. The defendant T. K. Knight and C. R. Gain (then living, but deceased when the bill was filed, and for some time previous thereto) also claimed to have title to said tract of land. A controversy arose concerning the same, and, in order to adjust it, an agreement was entered into by said parties, signed and executed by all of them, under date of July 24, 1885, by which it was provided that they should convey their respective claims and interests in the land to the defendant J. V. Blair, as trustee, who was authorized therein to sell the same, under the directions of the parties thereto, and divide the proceeds thereof, after paying the expenses of the trust, as follows: To the board of trustees of Oberlin College, one-half; to C. R. Gain, one-fourth; and to T. K. Knight, one-fourth. In accordance with said agreement, the board of trustees, on the 19th day of September, 1885, and said Gain and Knight, on the 13th day of January, 1886, made and delivered to Blair, as trustee, deeds conveying all their claims and title in and to the said tract of land. Blair, as such trustee, at once took possession of the land, sold a portion thereof, and remained in charge of the residue, until the 23d day of February, 1892, at which time he, with the assent of the board of trustees, of Knight, and of Henry Ash, who had theretofore qualified as the personal representative of the decedent, Gain, sold and conveyed the residue of said tract of land to the defendant S. B. McMillan, collected from him the purchase money due for the same, and disbursed it as required by the agreement before mentioned. It is set forth in the bill that the assent of said board of trustees to said sale was obtained from it by the trustee, Blair, in pursuance of a conspiracy entered into by the defendants McMillan, Ash, Pearcy, and Blair, the object of which was to defraud the said board out of its just rights in the land so sold; it being alleged that the land had lately before, on account of its proximity to the "oil belt" in that locality, become very valuable, which fact it is charged was fraudulently concealed from the board by said trustee. It is also charged in the bill that the assent of Knight to the sale by his trustee, Blair, was secured in some way to the plaintiff unknown, with the object of concealing the fraudulent purposes of said conspirators, and with the understanding that he was to retain a one-fifth interest in the land so conveyed to McMillan, the other four-fifths to be held, respectively, by McMillan, Ash, Pearcy, and Blair. It is also stated that Ash, fraudulently, in the interest of such conspiracy, induced Knight, on the 1st day of March, 1892, to lease to him the one-fifth part of the land that had been so retained by said Knight, the consideration for the lease being set out as $100 cash, and a one-eighth portion of the oil that might be removed from the land, as royalty. The plaintiff alleges that Ash was taken into the conspiracy, not only because he was a friend of

Blair, but also because he was the administrator of the estate of the decedent, Gain, the interests of which it is charged he was induced to betray, in order that he and his co-conspirators might secure the valuable property formerly owned by said Gain. It is also alleged that after the title was so conveyed to McMillan by Blair, trustee, the consideration being the sum of $1,280, said land was on the 21st day of March, 1892, by said parties, through McMillan, leased to the defendant the South Penn Oil Company, for a cash bonus paid them of $5,500, besides a reservation of one-eighth of all the oil, together with certain annual rentals, payments, and other provisions and conditions not necessary to be now recited. The allegation is also made that Ash, Pearcy, and Blair had contracts with McMillan (similar to the one held by Knight), before the deed for the land was made to him, for the sale and conveyance to them, respectively, of a one-fifth interest in and to the same. The plaintiff claims that, in view of such fraud, a court of equity will decree that McMillan, Blair, Ash, Pearcy, and Knight, holding the legal title to said land by and through McMillan, are trustees for the board of trustees, for said Knight, and for the heirs of C. R. Gain, deceased, in the same proportions, respectively, as was held for them by their trustee, Blair; and that it will direct that they, as such trustees, account for and pay over to such beneficiaries the sums of money so received by them from the South Penn Oil Company; and that it will also declare that the lease so made to that company of said land is for their use and benefit, at the same time requiring the oil company to attorn to those so entitled to the rents and profits of the land. The appointment of a receiver is asked for, to take charge of the property, and collect the royalties due and to become due thereon. An injunction is prayed for, restraining the alleged conspirators from selling the land, and from receiving from any party any portion of such rents and proceeds.

Such are the averments of the bill necessary to be referred to in connection with the questions I am now to dispose of. The defendants Blair, Ash, Pearcy, and McMillan individually, Blair as trustee, and Ash as administrator, demur to the bill, and also move the court to dismiss this suit for want of jurisdiction. On the hearing of the demurrer and of the motion to dismiss, the allegations of the bill will be taken as true.

It is the duty of the court, independent of plea or motion, under the provisions of section 5 of the act of March 3, 1875 (18 Stat. 470, 472), to examine the case, and see if it rightfully has jurisdiction of the matter presented to it by the bill. If this court has jurisdiction of this suit, it is by virtue of clause 1 of said act, as amended March 3, 1887, and August 13, 1888, which quoad hoc reads as follows:

"The circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, when the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the constitution or laws of the United States, or treaties made or which shall be made, under their authority, or in which controversy the United

States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different states, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid."

On the case as now submitted, I must look to the bill alone, in order to determine the character of the controversy. It sufficiently appears that the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and it only remains to ascertain if the suit involves a controversy between citizens of different states. In order to determine the question of jurisdiction, it is the duty of the court to find the real and substantial matter in dispute, and then to arrange the parties on the one side or the other of the controversy so found; and that is to be done regardless of the position they occupy in the pleadings as plaintiffs or defendants. When so arranged, it must appear that those on one side are all citizens of different states from those on the other, or the jurisdiction of the court must be denied, and the case be dismissed. Removal Cases, 100 U. S. 457, 468; Blake v. McKinn, 103 U. S. 336; Barth v. Coler, 19 U. S. App. 646, 9 C. C. A. 81, and 60 Fed. 466; Mangels v. Brewing Co., 53 Fed. 513; Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303; Hyde v. Ruble, 104 U. S. 407.

What is the real controversy in this case? It is not, as has been argued, simply a dispute between the plaintiff and defendants, for the purpose of ascertaining the sums due the beneficiaries under a trust, and directing the payment of the same to the parties entitled thereto. If the trustee Blair, after receiving the purchase money from McMillan, had neglected or refused to properly disburse it, then, as the deed creating the trust plainly designates the respective interests due the parties entitled to the funds arising therefrom, either one could have, under our equity rules, sued for his or its definite share, without making the others parties, under certain circumstances, and especially if the joinder would have ousted the jurisdiction of the court. In such a proceeding the others would not be indispensable parties, for their interests would not be affected, and the court could proceed without them. It would be a suit of the character mentioned in section 207a, Story, Eq. Pl., referred to by plaintiff's counsel, by which one of the beneficiaries under a trust may demand his own aliquot part, without making those entitled to the residue parties to the proceedings. But the bill in this case admits that Blair, as such trustee, has paid in full, to the parties to whom it belonged, the purchase money received by him from McMillan for said land, and as to that there is no controversy.

While the bill does not ask it in express words, still the true meaning of the relief prayed for is a decree requiring the South Penn Oil Company to account for with and pay over to the parties who conveyed said land to Blair, as trustee, or their legal representatives, all rents, royalties, and profits due from said company by virtue of the lease held by it for oil purposes on the property therein described, and also to declare the existence of a trust, in connection with the fund paid by said company on account of such lease prior to the institution of this suit, as to which Blair, Mc-

Millan, Ash, Pearcy, and Knight would be the trustees, and the plaintiff, Knight, and the heirs of Gain the beneficiaries. If the sale and conveyance of the land by Blair, as trustee, was free from fraud, then it is clear that the plaintiff's title was duly vested in McMillan; that it had no interest in said property when its suit was filed; and that no such decree can be entered, nor such a trust be adjudged to exist. The real controversy, therefore, is to ascertain whether or not the plaintiff had any interest whatever, at the time this suit was brought, in and to said land, the lease mentioned, and the fund derived therefrom.

As to such controversy there is but little trouble in the alignment of the parties. It is suggested that the position of Knight is with the plaintiff, and that he is interested in proving the fraud as alleged, and in establishing the trust, as claimed in the bill. I do not so find. The bill plainly charges that Knight was a party to the fraud, as asserted therein; and that his consent to the sale by which it is said the plaintiff was deceived, while obtained in some way to the plaintiff unknown, was made with the object of covering up the unlawful purposes of the conspiracy referred to, and with the understanding that he was to retain a one-fifth interest in the land, which it is set forth he subsequently leased to Ash. The allegation that Knight was induced by fraudulent misrepresentations, made to him after the sale to McMillan, to lease the said one-fifth interest, has no connection with the controversy I am now considering, the parties to which I am aligning. The real and substantial dispute in the case as made by the bill is between the board of trustees of Oberlin College and the representatives of the Gain estate, on one side, with Blair, McMillan, Ash, Pearcy, and Knight, on the other; the South Penn Oil Company to abide the result of the suit, and pay the royalties or rents as the court may decree. So far as the question of jurisdiction is concerned, it is immaterial whether the dispute is about the land or its proceeds,—about real or personal property,—as the question of citizenship is the same; the heirs of Gain as well as his personal representative being citizens of the same state. And so it appears that those on one side of this controversy are not all citizens of different states from those on the other. The Gain heirs, who are numerous, and who are all made parties, as well as the administrator of said estate, also a party, are citizens of the state of West Virginia; while Blair, McMillan, Ash, Pearcy, and Knight are likewise citizens of said state. We thus have on the side of the plaintiff—a citizen of the state of Ohio—parties who are citizens of West Virginia; while all of the defendants, except the South Penn Oil Company, are citizens of that state. It will follow that the bill must be dismissed, unless it appears that the heirs of Gain and his administrator are not indispensable parties to the controversy involved therein, and that this court can dismiss the suit as to them, retain it as to the others, and dispose of the subject-matter thereof.

Can this court determine said dispute without affecting their interests? If the McMillan deed is void as to the board of trustees of Oberlin College, is it not, under the allegations of this bill, also

void as to the Gain estate? And if a trust exists, as claimed, in favor of one, is not the other likewise interested in it? Would a final decree in this cause, in their absence, settle the controversy? If this court takes charge of the funds involved, and places them in the hands of its receiver, what disposition can it make of the one-half thereof not claimed by the plaintiff, if those entitled to the same are not parties to the suit? Will it use its process to collect a fund and hold the same in its registry, when it has not the power to dispose thereof for want of jurisdiction over those to whom it belongs? Will it only enjoin the oil company from paying, and only authorize its receiver to collect, the one-half of the rents and profits realized from said land, and relegate to another jurisdiction, for additional litigation, the claimants of the other half, who are also essentially interested in the disposition of this case? Instead of preventing, will it compel a multiplicity of suits? We need not answer these questions in detail, as it will suffice to say that they show the necessity for the presence in this court of the representatives of the Gain estate, and demonstrate that without them there can be no just and final adjudication of this controversy, thereby indicating that they are indispensable parties.

The rule as to who shall be made parties to a suit in equity, as stated in Story, Eq. Pl. 72, is quoted approvingly by the supreme court of the United States in Gregory v. Stetson, 133 U. S. 579, 586, 10 Sup. Ct. 422, and is as follows:

"It is a general rule in equity (subject to certain exceptions, which will hereafter be noticed) that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, either as plaintiffs or as defendants, however numerous they may be, so that there may be a complete decree, which shall bind them all. By this means the court is enabled to make a complete decree between the parties, to prevent further litigation by taking away the necessity of a multiplicity of suits, and to make it perfectly certain that no injustice is done, either to the parties before it, or to others who are interested in the subject-matter, by a decree which might otherwise be grounded upon a partial view only of the real merits. When all the parties are before the court, the whole case may be seen; but it may not, where all the conflicting interests are not brought out upon the pleading by the original parties thereto."

See, also, 1 Daniell, Ch. Prac. 246 et seq.

The bill charges not only that fraud was practiced in securing the consent of the plaintiff to the sale of the land to McMillan, but that also like fraud was resorted to in obtaining the assent of the representative of the Gain estate, the object of such allegations being to secure the rendition of a decree declaring the existence of a trust as before referred to. The plaintiff might fail in showing fraud so far as its own assent is concerned, and still be able to prove that fraud was used in connection with the procurement of the permission of the representative of said estate to make such sale, and in that event, because of the provision contained in the agreement under which the Blair trusteeship was created, that the sale therein authorized should be made "under the direction of the parties thereto," be entitled to relief of the character prayed for, if the proper parties were before the court to justify it. As the case now stands, such parties

are before the court; but their presence ousts the court of jurisdiction, and should the suit be dismissed as to them, as they are necessary and indispensable parties, no decree could be rendered that would afford full and final relief.

The plaintiff, on the facts set forth in its bill, deemed those representing the Gain estate necessary parties to this suit; but now, when the difficulties suggested are presented, the claim is made that they are merely formal parties; and the court is asked, in substance at least, to dismiss the bill as to them, and then proceed, under the authority of rule 47, equity practice, without their presence. I do not think said rule applicable to this case as it is now presented to me, and, besides, it is well settled that, notwithstanding said rule, a circuit court can make no decree in a suit in the absence of parties whose rights must necessarily be affected thereby, and that all persons whose interests will be directly affected by the decree are indispensable parties. Shields v. Barrow, 17 How. 130; Coiron v. Millaudon, 19 How. 113; Gregory v. Stetson, supra.

I hold that the parties to this suit as made by the plaintiff when it was instituted are all, not only necessary, but indispensable, to the proper hearing and final disposition of the real and substantial controversy involved in it; that such controversy is not divisible; and that, as it is not between citizens of different states, the bill must be dismissed. I will sign a decree to that effect.