CONSOLIDATED WATER CO. v. BABCOCK et al.

(Circuit Court, S. D. California. August 10, 1896.)

No. 667.

1. DIVERSE CITIZENSHIP.

Diverse citizenship, to sustain federal jurisdiction, must be such that all the parties on one side of the controversy are citizens of different states from all those on the other side; and, in determining the question of jurisdiction, the parties are to be arranged on one side or the other, as their interests require.

2. NECESSARY PARTIES.

Where a person is so related to the subject-matter of a suit in equity that his rights must unavoidably be passed on by the court in reaching a final decree, he is a necessary party.

3. SAME.

Complainant company, as owner of the bonds and most of the stock of two water companies which were furnishing water to a city and its inhabitants under a contract with the city, filed a bill to restrain the city from making and carrying out a contract with defendant water company for the furnishing of water by the latter, on the ground that such contract would be made through corrupt influences, and that its consummation would practically confiscate the property of the water companies, the stock and bonds of which were held by the complainant, and render such stock and bonds worthless. *Held*, that the water companies were necessary parties.

4. SAME.

The fact that the bonds of one of such water companies owned by complainant exceeded the assets of such company did not affect the necessity of making it a party.

Works & Works and Trippet & Neale, for complainant.

James A. Gibson, W. J. Hunsaker, T. A. Lewis, and H. E. Doolittle, for defendants.

WELLBORN, District Judge. This is a suit by the Consolidated Water Company, a corporation created under the laws of West Virginia, against the city of San Diego, a municipal corporation of California, its auditor and treasurer, the members of its common council, the Southern California Mountain Water Company, also a California corporation, and E. S. Babcock, a citizen of California, for a decree of this court that the making of a certain proposition by the city of San Diego to the defendant the Southern California Mountain Water Company, for the sale to said city of a water supply, and the construction, in connection therewith, of a distributing system for said city, the acceptance of said proposition, and all proceedings of said common council relative thereto, were the result of bribery and fraud, as in the bill set forth; that neither the said city of San Diego nor the Southern California Mountain Water Company has power or authority to enter into said proposed contract; and that any such contract, if made, will be void; and that the defendants and each of them be enjoined from proceeding further under said proposition and its acceptance; and, especially, that they and each of them be enjoined from entering into said proposed contract, or any contract of similar import, and from the submission of the question of issuing bonds of said city to carry out any such contract, and from issuing or disposing of any such bonds or their proceeds if voted; and for general relief.

The matters alleged in the bill, and which, for the purposes of the present hearing, must be accepted as facts, are these: The San Diego Water Company is a California corporation, and owns a certain water-distributing system and pumping plant in said city. The San Diego Flume Company is also a California corporation, and the owner of certain water rights and a flume line. These two corporations, by agreement between themselves, are now furnishing water, from and by means of their respective properties, to said city and its inhabitants. Complainant was organized for the purpose, among others, of acquiring the stock and bonds of the two last-named corporations, and consolidating their properties under one management, and now owns all of the bonds of said water company, amounting to $1,000,000, and all its stock, except 25 shares, of $100 each, and all of the bonds of said flume company, amounting to $663,000, except $25,000 thereof, and all the stock of said last-named company, except 60 shares. The Mount Tecarte Land & Water Company was duly organized as a corporation under the laws of the state of California, with defendant E. S. Babcock as its president. The Southern California Mountain Water Company, also a California corporation, and of which said Babcock is president, was organized March 9, 1895, and has acquired all the water rights, reservoir sites, and other property owned or claimed by said Mount Tecarte Company. In the year 1891 said common council began, and has since continuously been, negotiat-

ing with the Mount Tecarte Land & Water Company, the Southern California Mountain Water Company, the San Diego Water Company, the San Diego Flume Company, and other corporations and persons, for a supply of water and distributing system for said city and its inhabitants. Defendant Babcock and the Mount Tecarte Land & Water Company employed one C. E. Mayne to bribe and otherwise illegally and corruptly influence members of said common council to support any proposition made by the Mount Tecarte Land & Water Company, and, pursuant to such employment, Mayne furnished money to and bribed certain members of said common council; and said Southern California Mountain Water Company, organized by Babcock and those associated with him in the Mount Tecarte Company, for the purpose of acquiring the properties of the Mount Tecarte Company, and to continue the negotiations, propositions, and offers to furnish to said city its water supply and distributing system, together with said Babcock and his agents, still have under their pay and corrupt influence said members of the city council, who have supported, and will, on account of such influence, continue to support, the proposition of said company to furnish said city with water and its distributing system. On July 16, 1895, said common council invited propositions for a distributing system and water supply for the city, and, in response thereto, the San Diego Water Company, San Diego Flume Company, and the defendant Southern California Mountain Water Company filed bids, respectively, all of which bids were referred to a joint committee of said common council, of which committee the chairman and other members were bribed and under the corrupt influence of defendants Babcock and the Southern California Mountain Water Company. The chairman and other members of said committee, in fraudulent conspiracy with Babcock and the Southern California Mountain Water Company, by false and fraudulent means, defeated and caused to be rejected the bids of the said flume company and of the San Diego Water Company, and, in further pursuance of said fraudulent conspiracy, secretly prepared a proposition to said Southern California Mountain Water Company for the purchase by said city from said company of the Upper Otay reservoir and dam, together with conduit of 1,000 inches capacity from said reservoir and dam to said city and other water rights, said city to pay therefor $1,075,000 of 5 per cent. 40-year bonds, and also for the construction within said city, by the said Southern California Mountain Water Company, at a cost of $500,000, in 5 per cent. 40-year bonds, of a distributing system of cast-iron pipe of double the capacity of the San Diego Water Company's distributing system, the construction of the said distributing system conditioned, however, upon the failure of said city to purchase from the San Diego Water Company its distributing system for $500,000. Said proposition was accepted, and thereafter a proposition made by said council to said San Diego Water Company to purchase its distributing system and other property for the said sum of $500,000; but said last proposition was refused, the same not having been made in good faith, as said common council knew that the said sum was much

less than the value of said property. At the same meeting at which said resolution making said offer was adopted, said council also adopted a report of said water committee in favor of entering into the aforesaid contract with said Southern California Mountain Water Company, without waiting for an acceptance or rejection of said offer to said San Diego Water Company. Afterwards other propositions were made for a distributing system and water supply by the said San Diego Water Company and San Diego Flume Company, which were by the said council referred to said joint water committee; but said committee reported in favor of placing the same on file, and also reported again in favor of entering into said contract with said Southern California Mountain Water Company, which report was by said council adopted. This report would not have been adopted but for the fact that the chairman of said committee and other members thereof and certain other members of said council were under the corrupt influence of said Babcock and said Southern California Mountain Water Company, and had been bribed by them to support said proposition. Babcock, acting for himself and for said Southern California Mountain Water Company, has entered into contracts and agreements with other persons, citizens and electors of said city of San Diego, to pay them sums of money or bonds of said city, contingent upon said city making said contract with said company, by which said persons are to corrupt and illegally influence members of said common council and voters at the polls in case the question of issuing bonds for the purpose of carrying out said contract is submitted to a vote of the people. Unless restrained by this court, said Babcock and said Southern California Mountain Water Company will continue to corruptly and illegally influence and bribe members of said common council and electors of said city, and thereby said proposed contract between said city and said Southern California Mountain Water Company will be entered into, and bonds of said city for the said sum of $1,575,000 will be voted and issued by the officers of said city, and said bonds or the proceeds thereof be delivered to the said last-named water company, and a new distributing system for the delivery of water to said city and its inhabitants be put in, and the distributing system, plant, and water rights of the San Diego Water Company thereby confiscated and rendered worthless, and the security of complainant for the bonds of said last-named company held and owned by it be thereby rendered worthless and of no value.

Defendants have demurred to the bill, and the following are the grounds of the demurrer, as therein stated:

"(1) That it appears by complainant's own showing from the said bill of complaint that the said complainant is not entitled to the relief prayed for in said bill of complaint against the defendants here demurring, or any one of them. (2) That it appears from said bill of complaint that there are divers other persons who are necessary parties to the said bill of complaint, but who are not made parties thereto; that, in particular, it appears from the said bill of complaint that the San Diego Water Company and the San Diego Flume Company, both corporations created and existing under and by virtue of the laws of the state of California, are necessary parties com--

plainant in said cause, but that neither the said San Diego Water Company nor the said San Diego Flume Company are made parties to said bill of complaint. (3) That it appears upon the face of the said bill of complaint that the complainant herein is not the real party in interest, and that said San Diego Water Company and said San Diego Flume Company are the real parties in interest in the matters and things alleged in said bill of complaint. (4) That the said bill is exhibited against the said defendants city of San Diego, S. Levi and eight others, members of and constituting the board of aldermen of said city, and Charles W. Pauly and fifteen others, members of and constituting the board of delegates of said city, Nat R. Titus, auditor of said city, and T. J. Dowell, treasurer of said city, and against other defendants to the said bill, for several distinct and independent matters and causes, which have no relation to each other, and in which, or in the greater part of which, these defendants are in no way interested or concerned, and ought not to be implicated. (5) That it appears by the said bill of complaint that this court has no jurisdiction of the matters and things or of the alleged cause of action stated therein. (6) That there is a misjoinder of parties defendant in the said bill of complaint, in that Nat R. Titus, auditor of said city of San Diego, is improperly joined with the other defendants in said bill. (7) That there is a misjoinder of parties defendant in the said bill of complaint, in that T. J. Dowell, treasurer of said city of San Diego, is improperly joined with the other defendants in said bill. (8) That it appears from the said bill of complaint that there is another action pending between the same parties for the same causes alleged and set forth in sections 29, 30, 31, and 32 of the said bill."

Subsequent to the filing of the original bill, complainant petitioned the court for leave to file a supplemental bill, showing:

"That since the filing of said original bill the said Southern California Mountain Water Company and the said city of San Diego have, as it was alleged in said original bill they would do, entered into a contract similar to the one proposed to be made as alleged in said original bill; and the common council of said city has passed ordinances authorizing the making of said contract, and calling for an election of the people of said city to vote bonds in the sum of $1,575,000 to be sold, and the proceeds invested in carrying out the contract so made. Said matter has been submitted to the vote of the people, and the issuance of said bonds has been authorized by such election. * * * That the said proceedings subsequent to the filing of said original bill are fraudulent and void and illegal and in violation of law."

To the filing of this supplemental bill, defendants object, on the following grounds: First, that the original bill does not state facts entitling the complainant to equitable relief; second, that the court has no jurisdiction of the suit; third, that the supplemental bill is not in aid of the original bill, but states a different contract from that set forth in the original bill.

The demurrer to the original bill, and the petition of complainant for leave to file a supplemental bill, have both been argued, and are now under submission. Obviously, the first question to be determined is that ground of the demurrer which challenges the jurisdiction of the court. If that ground is not well taken, then the other objections to the bill, and also the petition for leave to file a supplemental bill, are proper subjects for consideration. If, however, the demurrer be sustained, upon the ground indicated, then the court is without any power in the premises, other than to dismiss the bill.

Complainant asserts that this court has jurisdiction because of the diverse citizenship of the parties. To this claim of jurisdiction, defendants reply that, while it is true the citizenship of the present

parties to the bill is diverse, yet the bill discloses the lack of necessary parties, the San Diego Water Company and the San Diego Flume Company, whose introduction by amendment would destroy the existing conditions of diverse citizenship, and therefore it plainly appears now that the court is without jurisdiction. Is this position tenable? For convenience and brevity, my discussion of this point will be confined in terms largely to the water company, although, since the interest of the flume company in the controversy is of the same general nature as that of the water company, the conclusions reached by me will apply to both companies.

It is unquestionably true that diverse citizenship, to sustain federal jurisdiction, must be such that all the parties on one side of the controversy are citizens of different states from all those on the other side, and that it is the duty of the court, in determining the question of jurisdiction, to arrange the parties on the one side or the other, according as their interests require, regardless of the position they occupy in the pleadings as plaintiffs or defendants. Board of Trustees v. Blair, 70 Fed. 414; Meyer v. Construction Co., 100 U. S. 457, 468; Railroad Co. v. Ketchum, 101 U. S. 289; Wilson v. Oswego Tp., 151 U. S. 56, 14 Sup. Ct. 259; Pittsburgh, C. & St. L. Ry. Co. v. Baltimore & O. R. Co., 10 C. C. A. 20, 61 Fed. 705; Shipp v. Williams, 10 C. C. A. 247, 62 Fed. 4; Mangels v. Brewing Co., 53 Fed. 513; Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303. It is also unquestionably true, as shown by the bill, that the interests of the San Diego Water Company are such that, if said company were a party to the suit, the court, in order to determine the question of jurisdiction, would align said company with complainant, and in that event the controversy would not be wholly between citizens of different states.

The only remaining question, then, in this connection, is whether or not the San Diego Water Company is a necessary party. On this subject, the rule, I think, may be stated thus: Where a person is so related to the subject-matter of a suit in equity as that the rights of such person must unavoidably be passed upon by the court in reaching a final decree, such person is a necessary party. The object of the rule, as declared by the authorities, is to avoid other suits, by settling, in the one which is pending, the whole controversy. The supreme court of the United States, speaking of necessary parties, has said:

"This class cannot be better described than in the language of this court in Shields v. Barrow, 17 How. 130, in which a very able and satisfactory discussion of the whole subject is had. They are there said to be 'persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.' This language aptly describes the character of the interest of the Ridgelys in the land of which partition is sought in this suit, and in the account which is asked for, of rents and profits. If a decree is made which is intended to bind them, it is manifestly unjust to do this when they are not parties to the suit, and have no opportunity to be heard. But, as the decree cannot bind them, the court cannot for that very reason afford the relief asked, to the other parties." Barney v. Baltimore, 6 Wall. 280–291.

And, again, the supreme court has said:

"The rule as to who shall be made parties to a suit in equity is thus stated in Story, Eq. Pl. § 72: 'It is a general rule in equity (subject to certain exceptions, which will hereafter be noticed) that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, either as plaintiffs or as defendants, however numerous they may be, so that there may be a complete decree between the parties, to prevent future litigation, by taking away the necessity of a multiplicity of suits, and to make it perfectly certain that no injustice is done, either to the parties before it or to others who are interested in the subject-matter, by a decree, which might otherwise be grounded upon a partial view only of the real merits. When all the parties are before the court, the whole case may be seen; but it may not where all the conflicting interests are not brought out upon the pleadings by the original parties thereto.' See, also, 1 Daniell, Ch. Pl. & Prac. 246 et seq. In the case before us we are unable to see how any final decree could be rendered affecting the parties to the contract sued on without making them all parties to the suit. It is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actively or constructively before it. This principle is fundamental. The allegations of the bill show that the contract sued on was made and entered into subsequent to the termination of the proceedings before the referee. By the terms of that contract, the note in dispute between Mrs. Pike and the complainant was to be held by the bailee, Stetson, 'subject to the joint order and direction' of their respective attorneys. It seems too plain to require argument that complainant Gregory, Mrs. Pike, Talbot, Brooks, and Stetson all had an interest in the subject-matter of the contract,—such an interest, too, as brings the case within the rule just announced." Gregory v. Stetson, 133 U. S. 579, 10 Sup. Ct. 424.

Now, what are the facts which connect the San Diego Water Company and the San Diego Flume Company with the pending controversy? Complainant's right to sue rests solely upon its ownership of stock and bonds of said companies. For the present inquiry, it matters not whether the right be rested upon the ownership of stock or the ownership of bonds. The result in either event will be the same. The threatened injuries which the bill seeks to avert are set forth in the bill itself, as follows:

"That the security of the bonds of the said San Diego Flume Company and the value of its stock depend materially upon its right and its ability to supply a part of its water to the said city and its inhabitants; and, if the said San Diego Water Company is deprived of its said distributing system, the main purpose of the incorporation of your orator, and the purchase by it of the stock and bonds of said companies, will be wholly defeated, and your orator and its stockholders will be damaged in the sum of not less than $1,500,000. * * * And your orator is informed and believes that, unless restrained by your honors, the said Babcock and the said Southern California Mountain Water Company will continue to corruptly and illegally influence and bribe members of said common council and electors of said city; and that thereby said proposed contract between said city and said Southern California Mountain Water Company will be entered into, and bonds of said city in the said sum of $1,575,000 will be voted and issued by the officers of said city, and said bonds or the proceeds thereof be delivered to said last-named water company, and a new distributing system for the delivery of water to said city and its inhabitants be put in, and the distributing system, plant, and water rights of said San Diego Water Company be thereby confiscated and rendered worthless, and the security of your orator for the bonds of said last-named company held and owned by it be thereby rendered worthless and of no value. * * * That if said proposed distributing system is put in, as proposed, the distributing system, water rights, and property of the San Diego Water Company, purchased and constructed for the use and benefit of said city and its inhabitants, and part of which was put in

at the request of said city, and upon and in compliance with its express orders, as aforesaid, and its franchise to use the same, will thereby be confiscated and rendered practically worthless, and the bonds of said company held and owned by your orator, and secured by said property alone, will thereby be rendered valueless."

Thus, it will be seen that the end aimed at by the bill, whatever may be the purpose of or resulting benefit to complainant, is the protection of the property and franchises of the San Diego Water Company and the San Diego Flume Company, and that the interests of these two companies, so far as the present suit is concerned, are identical with and inseparable from the interests of complainant. It would be impossible for the court to reach any judgment determinative of complainant's rights without passing upon the rights of said companies. Therefore, in order to bind them, and thus avoid a multiplicity of suits, equity deems them necessary parties to the litigation.

Complainant argues, however, in this connection, that the San Diego Water Company is not the real party in interest, because its whole property is worth but $800,000, and the bonds owned by complainant amount to $1,000,000; that is, the bonded debt of the company exceeds its assets by $200,000. This argument, to me, seems vulnerable. Certainly, the solvency of a corporation is not the test of its interest in a given issue. If the corporate property is insufficient to discharge the corporate debts, there may be personal liabilities, for the deficiency, against the stockholders. Thus, it will be seen that an insolvent corporation is as vitally interested in the preservation of its property rights and franchises as the most solvent company.

Complainant urges, as a further reason why the San Diego Water Company is not a necessary party, the following:

"There is no foundation for the claim, made by the defendants, that the action is brought to protect the property of the water company, and that, therefore, the water company is a necessary party. The suit is brought to protect the security of the complainant, and that it may maintain the action for that purpose is conclusively settled by the cases above cited."

The infirmity of this reasoning lies in the fact that it makes the purpose of the complainant, rather than the subject-matter of the relief asked for in the bill, the rule for determining who are necessary parties. Conceding that the object—that is, the purpose —of the complainant in bringing the suit, as stated in the above quotation from complainant's brief, is the protection of its security, yet, unavoidably and manifestly, the court, in reaching a decree, must pass upon rights of the water company. Indeed, this situation is not only recognized, but declared with strongest emphasis, by complainant's counsel, as follows:

"The bill shows (1) that the complainant is the owner of all but a few shares of the stock of the San Diego Water Company, which is directly interested in the controversy, and of the San Diego Flume Company, which is indirectly interested therein; (2) that the complainant is also the owner of all of the bonds of the said San Diego Water Company, amounting to $1,000,-000, and all of the $663,000 of bonds of the said Flume Company, except $25,000 worth thereof."

To illustrate, further, the impossibility, in the absence of the San Diego Water Company, of a complete determination of the controversy here involved: Suppose that this court should entertain the suit, and ultimately render a judgment against the complainant; is it not perfectly manifest that the San Diego Water Company could afterwards litigate with defendants the very questions passed upon by the court in arriving at said judgment? The bare statement of this question shows conclusively that the San Diego Water Company falls directly within the rule which distinguishes necessary parties.

There is yet another feature of the bill which emphasizes the indispensableness of the water company to a full settlement of the controversy which the bill presents. This feature, for the purpose I now have in view, cannot be better described than in the language of complainant's counsel. Referring to the contract set up in the bill, between the San Diego Flume Company and the San Diego Water Company, and the subsequent contract between the latter company and the city of San Diego, complainant's counsel says:

"But the contracts referred to are only set up for the purpose of showing that the making of a new contract by the city with the Southern California Mountain Water Company would be in violation of the existing right of the San Diego Water Company to supply water to the city of San Diego, and to use its distributing system for that purpose, and that, therefore, the property rights of the complainant will be unlawfully injured. It is not alleged, as counsel state, that the contract was ever rescinded, but, on the contrary, it is claimed by the complainant and said water company to be in full force, and that by virtue thereof the water company has expended over $100,000 at the instance and for the benefit of the city; that, by the terms of the contract, the city is bound to retain and pay for the use of the distributing system, or to purchase the same, as provided therein; and that to make a new contract for a distributing system would not only be unlawful, but would be in violation of vested rights under the old contract."

If this quotation presents a correct view of that part of the bill to which it relates, a final decree on the merits could not be reached without adjudicating upon the rights of the water company under said contracts. Is it not too clear to admit of dispute that such adjudication cannot be had in a suit in equity, to which the water company is not a party? Suppose these asserted contractual rights were determined adversely to the water company; could not said company again litigate the whole matter with the defendants? As directly pertinent here, I make the following quotation from a decision of the supreme court of the United States:

"That a stockholder may bring suit when a corporation refuses is settled in Dodge v. Woolsey, 18 How. 340; but such a suit can only be maintained on the ground that the rights of the corporation are involved. These rights the individual shareholder is allowed to assert in behalf of himself and associates, because the directors of the corporation decline to take the proper steps to assert them. Manifestly, the proceedings for this purpose should be so conducted that any decree which shall be made on the merits shall conclude the corporation. This can only be done by making the corporation a party defendant. The relief asked is on behalf of the corporation, not the individual shareholder; and, if it be granted, the complainant derives only an incidental benefit from it. It would be wrong, in case the shareholder were unsuccessful, to allow the corporation to renew the litigation in another suit,

involving precisely the same subject-matter. To avoid such a result, a court of equity will not take cognizance of a bill brought to settle a question in which the corporation is the essential party in interest, unless it is made a party to the litigation." Davenport v. Dows, 18 Wall. 626.

While it is true the complainant in the case last cited was a stockholder, still the decision was not rested at all on the trust relation existing between corporate authorities and a stockholder, but solely upon the ground that the rights of the corporation were so essentially involved that, without an adjudication thereon, no final judgment could be reached.

Again, it has been said by the same high authority:

"Now, it is too clear to admit of discussion that the various corporations charged with the fraud which has resulted in damage to the complainant are necessary and indispensable parties to any suit to establish the alleged fraud, and to determine the damages arising therefrom. Unless made parties to the proceeding in which these matters are to be passed upon and adjudicated, neither they nor their other stockholders would be concluded by the decree. The defendants cannot be required to litigate those questions which primarily and directly involve issues with third parties not before the court. As any decree rendered against them would not bind either the corporations or their co-shareholders, it would manifestly violate all rules of equity pleading and practice to pursue and hold the defendant on an unliquidated demand for damages against said companies not before the court." Cattle Co. v. Frank, 148 U. S. 604, 13 Sup. Ct. 693.

I am satisfied that the San Diego Water Company and the San Diego Flume Company are necessary parties to the litigation, and, further, that, if they were made parties to this suit, the controversy would not be wholly between citizens of different states. Where these two facts exist, as has been repeatedly held by the supreme court of the United States, the suit cannot be entertained. Barney v. Baltimore, 6 Wall. 280-291; Fourth Nat. Bank v. New Orleans & C. R. Co., 11 Wall. 624-632; Shields v. Barrow, 17 How. 130-146. Therefore the petition for leave to file a supplemental bill will be denied, and the demurrer to the original bill will be sustained, for want of jurisdiction, and complainant allowed 20 days to amend, if it shall be so advised.