BRY-MAN'S, INC., Appellant,

v.

Herman F. STUTE, Jr., d/b/a H. G. Stute
Company, Appellee.

No. 19795.

United States Court of Appeals
Fifth Circuit.

Jan. 17, 1963.

Pittman & Kinney, Dalton, Ga., for appellant.

L. Hugh Kemp, Dalton, Ga., for appellant.

William T. McGee, Fort Worth, Tex., Clinton J. Morgan, Rogers, Magruder, Hoyt, Wright & Walther, Rome, Ga., for appellee.

Before TUTTLE, Chief Judge, and WISDOM and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

The plaintiff, a citizen of Texas, filed suit against defendant Corporation of Georgia, in the District Court in the Northern District of Georgia to recover a commission allegedly due him as a broker for securing for the defendant a loan commitment from the Lincoln National Life Insurance Company.

The complaint was brought originally in the alternative: on the one hand, that there was an express contract to pay both the plaintiff and another, one McEvoy, a 2% fee for securing a loan commitment; on the other hand, that, if for any reason the agreement was not enforceable by plaintiff, he should be entitled to $12,000, which was a 1% commission, on a quantum meruit basis for services rendered in securing the loan. The district court dismissed that part of the complaint which was in express contract, on the grounds of failure to join McEvoy, a Georgia citizen, as plaintiff, whose joinder as an indispensable party would have destroyed jurisdiction based on diversity of citizenship. The trial court, however, heard the case on a quantum meruit the-

ory, and upon trial without a jury awarded a verdict for the plaintiff for $6,000, which represented one-half of a one percent commission. The plaintiff had sought one-half of a two percent commission, but the Court decided that a one percent commission was reasonable, granting one-half of that to the plaintiff.

The defendant appeals the judgment on two grounds, one of which goes to the merits of the case which we need not decide, for we find for the defendant on his other ground, namely, that the case should have been dismissed for failure to join McEvoy as an indispensable party. This was the basis for the dismissal by the District Judge of that part of the original complaint brought in express contract.

On several questions the evidence is conflicting, but with regard to the issue of indispensability, the evidence is clear enough for this Court to determine that plaintiff's and McEvoy's interests in the commission were joint, irrespective of the theory under which they might recover, and that the claim should have been dismissed for failure to join McEvoy.[1]

The defendant corporation needed a large sum of money to finance the erection of a shopping center in Dalton, Georgia. Through its agent, Sertich, the defendant corporation[2] approached one Lawrence McEvoy, an Atlanta broker, to assist in obtaining a loan for the corporation. McEvoy got plaintiff in Texas to aid him in obtaining the loan. Plaintiff approached a Lincoln National Life Insurance agent in Texas who referred him to McGuire, the manager of the Lincoln office in Atlanta. It was through McGuire that the Lincoln loan to defendant was approved. We, of course, do not consider that evidence relating to the ultimate question of whether plaintiff and/or McEvoy should in fact get credit for obtaining the loan for the defendant. Nor do we need to examine the District Judge's findings to determine if they were not "clearly erroneous." It is clear from the Court's findings, the transcript of the testimony, and even the amended complaint, that the plaintiff and McEvoy, if they are entitled to any commission at all, are entitled to it jointly, and not severally, for their services rendered.

There is no prescribed formula for determining whether a party, an individual, or a corporation, is an indispensable party or just a necessary party.[3] Niles-Bement-Pond Co. v. Iron Moulders Union, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145. The test often repeated is that from Shields v. Barrow, 17 How. 129, 130, 139, 58 U.S. 129, 139, 15 L.Ed. 158, 160 (1855):

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience."

The Supreme Court found in that case that all of the endorsers of a contract had such a direct and immediate interest in the contract, and that interest was so entire and indivisible, that without their

---

1. This is not a proper case under Rule 19 of the Federal Rules of Civil Procedure in which McEvoy could be joined as a party-defendant. Even if he were, we would have to realign him as a proper party-plaintiff and jurisdiction still would be destroyed.

2. There was conflicting testimony on the issue of whether the officers of the defendant corporation actually knew of McEvoy's and plaintiff's part, or what part they played, in obtaining the loan; but

for the purposes of the question involved here, it is sufficient to say that Sertich, the authorized agent of defendant, knew of both McEvoy and plaintiff, in fact, had, himself, contacted McEvoy to work on the loan, and knew that McEvoy had gotten plaintiff to work on it with him.

3. The distinction is a fine line, but once it is established, definite consequences follow. See F.R.Civ.Proc. 19; 3 Moore, Federal Practice ¶ 19.

presence, no decree could be made. The parties were all joint obligees on the contract and should all have joined in the suit as plaintiffs. The Court said as to necessary parties:

"Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties."

■ It has often been held that joint obligees are indispensable parties when suing an obligor. See Gregory v. Stetson, 133 U.S. 579, 10 S.Ct. 422, 33 L.Ed. 792 (1890); Hines v. Schmehl, 257 F. 69 (3d Cir. 1919); McAulay v. Moody, 185 F. 144 (C.C.Ore.1911). One of the reasons behind having all the parties of a joint interest litigate their interest in one action is the "necessity or propriety for conformity with remedies for enforcing those interests to the nature of the interests themselves." Calvert v. Bradley, 16 How. 580, 57 U.S. 580, 596, 14 L.Ed. 1066, 1073 (1853). Indispensability at common law was not really a jurisdictional ground for dismissing a cause of action or bill in equity. It was and is a rule based on equity, and the cardinal rule in equity was that all persons materially interested in a suit ought to be made parties to a suit in order to prevent multiplicity of suits, and that there might be a complete and final decree between all parties interested. See Mallow v. Hinde, 12 Wheat. 193, 25 U.S. 193, 6 L.Ed. 599, 600 (1827); 3 Moore, Federal Practice ¶ 19.05, p. 2144, Note 2. Obligors have a "right to stand upon their contract and insist that they shall not be harassed with different actions or suits to recover parts of one single demand." McAulay v. Moody, supra.

■■ Even though this action was brought on a theory of quantum meruit,[4] rather than express contract, any obligation which might be inferred from the evidence and the complaint itself is owed to both McEvoy and plaintiff jointly. It was McEvoy who was first employed by the defendant to secure the loan. McEvoy and plaintiff even referred to each other as partners in the transaction, yet the plaintiff claims on appeal that they were not partners. Both the plaintiff and defendant argue strongly the question of whether or not they were "partners." We do not feel that this determination is controlling. Although they may not have been "partners" in the legal sense in this transaction, they were certainly joint adventurers and, moreover, joint obligees. This even appears in the district court's judgment. The trial court found that one percent was a "fair" commission, and awarded one-half of that to the plaintiff.

■ The inference which we draw from this is that the Court thought McEvoy was entitled to the other half. This is "persuasive that the interests of all parties on both sides are inextricably bound together in one cause."[5] This

---

4. An action in quantum meruit, although legal in form, is equitable in nature, but the rule of indispensability in actions at law in joint contracts likewise prevails in equity. See Himes v. Schmehl, 257 F. 69, 71 (3d Cir. 1919). In fact, indispensability is an equitable doctrine.

5. Appellee relies on Standard Oil Co. of Texas v. Marshall, 265 F.2d 46 (5th Cir., 1959) for the proposition that if plaintiff and McEvoy were not partners, then each have a separate quantum meruit cause of action, and neither would be an indispensable party in a suit brought by the other. That case involved a suit by a single owner of an interest in land for trespass to try title without joining the owners of royalty payments. This court held that the latter were not indispensable parties. That case is not apposite here.

588

language was used in a case where 33 insurance companies sought a declaratory judgment to determine their liability for losses from an explosion which they had insured proportionately, along with two resident companies. American Ins. Co. v. Bradley Mining Co., D.C., 57 F.Supp. 545, 547. The case was dismissed for failure to join the two resident insurance companies who were indispensable parties. The court said that the essential issue, liability, could well be determined one way in the Federal Court and directly to the contrary in the State Court.[6] The event in the litigation which brought about the court's inference, see the above quoted language, was when the plaintiff's attorneys offered to stipulate to a decree in the state court, conforming to any decree therein. No less an inference may be drawn from the district court's opinion in this case. It thus appears that "the interests of all parties on both sides are inextricably bound together in one cause." To allow the adjudication of the present controversy without the presence of McEvoy as a party-plaintiff would leave the "controversy in such a condition that its final determination may be wholly inconsistent with equity

and good conscience." Shields v. Barrow, supra.

The judgment is

Reversed.

6. It is this inconsistency that impresses this court. We can certainly visualize the inequity which would result from allowing separate suits on a theory of quantum meruit in such a case where the obligation is clearly a single one. This inequity is not merely to avoid subjecting an obligor to harassment by successive suits over a single obligation. It is more than this.

If plaintiff were allowed to proceed alone in the Federal Court and McEvoy to sue separately in a state court, the doctrine of res judicata probably would not be available to defendant against McEvoy in the latter's state court suit. It is quite doubtful that McEvoy could be said to be a privy to Stute, but we do not need to reach this question since we would have an inequitable result in either event. On the one hand we could have this situation: The Federal District Court could find that Stute was entitled to a greater share of the commission than McEvoy, and the state court could find that McEvoy was entitled

to a greater share than Stute. It is even conceivable that both courts could find that the party before it was entitled to an undivided "fair" brokerage commission of 2%. Thus the defendant would find itself paying out a double commission merely because of the opposite findings of "fair share" of the commission by the respective courts. Not only would this be highly inequitable to the defendant, but it would be an attempt by each court to adjudicate the rights of persons not before it.

On the other hand even if McEvoy in his suit in the state court were found to be bound by the previous action by Stute under the doctrine of res judicata as being a privy to that action, then the other inequity to be prevented by the equitable doctrine of indispensability would raise its ugly head, viz., where adjudication would necessarily "affect" the rights of an absent party. See Restatement of the Law, Judgments, § 102. And see Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971.