REAVIS et al. *v.* REAVIS et al.

(Circuit Court, N. D. California. November 27, 1899.)

No. 12,158.

JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP — REAL INTERESTS OF PARTIES.

> Complainants filed a bill in a circuit court of the United States in California against defendants, who were citizens of that state, alleging that complainants were heirs at law of a decedent from whom, prior to his death, one of the defendants, who was also a brother, and one of his heirs, had procured a conveyance of all his property without consideration, and which was invalid by reason of the decedent's insanity; that subsequently such defendant, who was insolvent, had conveyed such property to his codefendant in payment of an antecedent indebtedness. The prayer of the bill was that such conveyances be set aside as to such shares of the property as would have been inherited by complainants. *Held,* that the court could not determine from such allegations and prayer that the interest of the defendant, who was a co-heir with complainants, would be best served by their success, so as to require such an arrangement of parties as would make him a complainant, and defeat the court's jurisdiction, there being no proof of fraud or collusion on the part of complainants.[1]

In Equity. On motion by respondent Clarke to dismiss for want of jurisdiction.

Goodwin & Goodwin, for complainants.
McKune & George, for respondent Clarke.

MORROW, Circuit Judge. The complainants in this action are residents and citizens of the state of Missouri, and the respondents residents and citizens of the state of California. Complainants, in their amended bill, allege that they are the heirs at law of one Andrew Reavis, deceased, and that the respondents David M. Reavis, James J. Reavis, and Crawford W. Clarke have fraudulently acquired, held, and used certain real and personal property formerly belonging to the said Andrew Reavis, and that, by reason of this fraud, David M. Reavis and James J. Reavis, prior to April 27, 1892, held, and since the last date the said Crawford W. Clarke has held, and now holds, said property. James J. Reavis is the son of David M. Reavis, and Ann E. Reavis is the wife of D. M. Reavis. The allegations of the bill with regard to the subject of the action are substantially as follows: That Andrew Reavis was, on January 2, 1885, the owner of a ranch in Lassen county, known as the "Dixie Valley Ranch," worth $30,000, and of the annual rental value of $3,000, and also of cattle and other personal property on this ranch, of the value of $50,000; that at the date named Andrew Reavis was committed, by order of the superior court of this state for the county of Alameda, to the state asylum for the insane at Stockton, and his brother, D. M. Reavis, was appointed as his guardian, and directed to pay the expenses of his maintenance at this asylum; that James J. Reavis, the nephew of Andrew Reavis, had been, for about five years previous to the com-

[1] For diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249, and Mason v. Dullagham, 27 C. C. A. 298.

mittal of the latter to the state asylum for the insane, his confidential agent and attorney in fact, and Andrew Reavis and the respondents D. M. Reavis, James J. Reavis, and Ann E. Reavis had lived together on the most intimate terms; that the respondent Clarke was during this time the confidential agent of D. M. Reavis, who was indebted to him at the time of the committal of Andrew Reavis in the sum of more than $250,000, and for about $40,000 of this debt James J. Reavis and Andrew Reavis had, as accommodation makers, joined David M. Reavis in executing notes to Clarke; that after Andrew Reavis became insane, D. M. Reavis agreed with Clarke to get control of his property, so that he could mortgage and pledge it to him, Clarke knowing at that time that Andrew Reavis was insane; that D. M. and James J. Reavis went to Stockton on the 28th day of January, 1886, and, having obtained permission from the superintendent of said asylum, removed thence Andrew Reavis on January 29, 1886, and caused him to sign and acknowledge a deed on that date, conveying all of his property known as the "Dixie Valley Ranch" to D. M. and James J. Reavis, which deed was made without consideration, and while Andrew Reavis was incompetent, and unable to understand the transaction; that thereafter James J. Reavis removed Andrew Reavis to his home on the premises aforesaid, where he remained until his death; that shortly after obtaining the deed from Andrew Reavis, James J. Reavis conveyed to D. M. Reavis whatever claim he had to the property, without consideration, and for the purpose of enabling D. M. Reavis to comply with his promise to Clarke as aforesaid; that notwithstanding this conveyance, James J. Reavis continued in the management of all of the said property for D. M. Reavis, and for Clarke, and on the demand of D. M. Reavis turned the proceeds, profits, and issues of all of the said property over to Clarke from the time that Andrew Reavis became insane until April 27, 1892, as a credit on the indebtedness of D. M. Reavis to Clarke, Clarke knowing that they were derived from the property; that on April 27, 1892, David M. Reavis, James J. Reavis, and Ann E. Reavis, conveyed by deed and bill of sale all of the said real and personal property to Clarke, who has ever since been in possession of the same; that Clarke did not pay the other defendants, or either of them, any money for this deed or bill of sale, but gave to the respondent D. M. Reavis a credit on his indebtedness; that on January 2, 1885, D. M. Reavis caused Andrew Reavis to make what purported to be his last will; that he was insane, and known to D. M. Reavis to be so at the time he made it; that by his said will he bequeathed $6,000 to D. M. Reavis, and various sums to the other complainants, aggregating about $12,000; that his will was, when executed, taken charge of by D. M. Reavis, and by him kept until demanded by complainants; that all the acts of the respondents by which they sought to acquire the title to the said property were done for the purpose of defrauding Andrew Reavis out of the whole thereof, and complainants out of their interest therein; and that by reason of their fraudulent conduct the deed from Andrew Reavis to D. M. and James J. Reavis, and the deed and bill of sale to Clarke, are void and of no effect, and that the respondents D. M. and James J. Reavis did hold, and Clarke now

holds, four-fifths of the said property, and the issues, profits, and proceeds thereof, in trust for complainants. Complainants pray for a decree in accordance with these allegations, and declaring that the respondent Clarke has held and now holds the said property, its issues, rents, increase, profits, and proceeds in trust for complainants, to the extent of four-fifths thereof; that four-fifths of the said property and its issues, rents, profits, increase, and proceeds belong to complainants, according to their respective rights therein, as the heirs of said Andrew Reavis; that the respondents David M. Reavis, James J. Reavis, and Crawford W. Clarke, account fully for said property, and the value derived therefrom; and that said Clarke execute to complainants all such conveyance or conveyances as may vest in them, and each of them, the right and title to their interests in said property. Respondent Clarke filed a plea in abatement, to which complainants demurred, and, the demurrer having been withdrawn by consent of counsel, the plea was overruled.

An answer and amended answer have been filed by respondent Clarke, and the issues joined by complainants' replication, and testimony has been taken. A motion has been made in behalf of the respondent Clarke to dismiss the amended bill, to which motion a replication has been filed by complainants' counsel, and testimony taken thereon; and the case now comes before the court upon this motion.

Counsel for respondent Clarke base this motion to dismiss upon the ground that the complainants have brought this suit for the benefit of themselves and D. M. Reavis; that, under a proper arrangement of parties, D. M. Reavis would be a complainant, and not a respondent to this action, and under such circumstances this court would have no jurisdiction of the case, since there would be no diversity of citizenship between the parties. It is provided in the act of March 3, 1875, entitled "An act to determine the jurisdiction of circuit courts of the United States and regulate the removal of causes from state courts, and for other purposes" (18 Stat. 470):

"Sec. 5. That if, in any suit commenced in a circuit court, or removed from a state court to a circuit court of the United States it shall appear to the satisfaction of said circuit court at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just."

The question, therefore, is whether the interests of D. M. Reavis require such an arrangement of the parties as will make him a complainant, instead of a respondent, in this action. If so, the court will arrange the parties according to their interests. Perin v. Megibben, 3 C. C. A. 443, 53 Fed. 86; Cilley v. Patten (C. C.) 62 Fed. 498; Board v. Blair (C. C.) 70 Fed. 414; Water Co. v. Babcock (C. C.) 76 Fed. 243. The situation of the parties, it is contended by counsel for the respondent Clarke, shows that the interests of D. M. Reavis, as well as of the complainants, would be best served

by setting aside the deed conveying the property to D. M. and James J. Reavis, and thus securing from the respondent Clarke all the property described in the bill. Such identity of interest cannot, however, be inferred from the bill, the prayer of which is, not that all the property, but that four-fifths of the property, be conveyed to the complainants, being heirs at law, according to their respective rights; from which it does not appear that D. M. Reavis would gain any advantage in the event of complainants obtaining a decree in accordance with the prayer of their bill, except upon the hypothesis of counsel that, if successful, complainants were to hold part of the property in secret trust for D. M. Reavis, of which there is no proof.

What purports to be the last will of Andrew Reavis was made on January 2, 1885. This will provided for a legacy of $6,000 to D. M. Reavis, who was appointed executor; some few small legacies; and that the balance be divided equally among the heirs of Andrew Reavis. The evidence shows that for a long time prior to the date of making this will Andrew Reavis had been in failing health, and that his mind became affected, so that on January 13, 1885, he was committed to the state asylum for the insane at Stockton, where he remained until January 29, 1886. Counsel for respondent Clarke contend that there is no evidence of the insanity of Andrew Reavis at the time of his making the will, but it is very clear that complainants have proceeded on the hypothesis that the will is invalid. The testimony of the witness Lusk as to the declarations of D. M. Reavis, made to him in January, 1885, has been introduced to show that D. M. Reavis was present when the will was made; that a settlement was then had between D. M. and Andrew Reavis, and that the former executed a note for $20,000 to the latter,—being more than he owed him; this note being made so that Andrew Reavis might dispose of the sum by will. It is also pointed out by counsel in the same connection, that D. M. Reavis was insolvent in the year 1890 and after, and that D. M. and James J. Reavis were in possession of the property described in the bill from January 29, 1886, to April 27, 1892, when it was deeded to Clarke. From these circumstances counsel infer that it was impossible for complainants to realize under the will, and they therefore, at the instance of D. M. Reavis, entered upon this suit to set aside the deed of Andrew Reavis to D. M. and James J. Reavis for their mutual benefit, and with the secret understanding before mentioned. The suit was brought by complainants, however, as a result of their having learned of the mental condition of Andrew Reavis at the time of his making the will, and the testimony of the witness Lusk regarding the declarations of D. M. Reavis to him does not establish any such collusion between the complainants and D. M. Reavis as is inferred by counsel. Other evidence has been introduced for the purpose of showing collusion, but this goes only to the declarations of D. M. Reavis himself, and consists of no more than a statement that he intended to "have his friends commence an action for the Dixie Valley," and the expression of the conviction that he would get the "Dixie Valley Ranch all right."

Counsel endeavor to gather from the deposition of the witness Hurd evidence of intimate relations between complainants and D. M. Reavis under a show of antagonism. No such conclusion can be reached from a reading of this deposition. Judge Hurd came to this state in March, 1893, for the purpose of investigating the condition of the estate of Andrew Reavis, deceased, the complainants in this case having grown suspicious of the behavior of D. M. Reavis with regard to the legacies which they had been informed by him they were to receive under the will of Andrew Reavis. While engaged in this business, Judge Hurd accidentally obtained information as to the condition of the estate of Andrew Reavis, which was further substantiated by the admissions of D. M. Reavis, and on his return to Missouri made a report thereupon to the complainants in this case. The depositions of the complainants agree that the determination to bring this suit was arrived at as a result of a conference of the complainants after finding that they had been misled by D. M. Reavis, and under the advice of Judge Hurd prior to the visit of D. M. Reavis to Missouri, which occurred subsequently to Judge Hurd's return.

The attempt of Clarke to retain Goodwin, one of the counsel for complainants herein, on or about July 1, 1893, and the facts in connection with that attempt, do not afford any proof of such collusion.

The alleged fraudulent acts of D. M. Reavis will be the subject of investigation when this case comes before the court upon its merits.

Whether there was an absolute sale of the Dixie Valley property by the deed of August 1, 1879, and the bill of sale of August 10, 1879, whether the will of Andrew Reavis is valid or invalid, and whether the deed of Andrew Reavis to D. M. Reavis and James J. Reavis is to be set aside, are all questions which concern the merits of the controversy, and cannot well be finally determined by the motion now before the court.

It does not appear from any testimony to which reference has been made, that any beneficial or pecuniary advantage can accrue to D. M. Reavis as the result of a decree in favor of complainants. On the other hand, he is charged by the complainants with fraudulently conspiring to deprive them of their property, and the winning of this suit by complainants will render him liable for an accounting of the property between January 29, 1886, and April 27, 1892. His real interest cannot, therefore, be better served by making him a complainant in this case. No satisfactory proof has been shown of collusion in the making or joining of the parties so as to render his case cognizable in this court. The motion to dismiss the bill will therefore be denied.