REAVIS et al. v. REAVIS et al.

(Circuit Court, D. California. March 26, 1900.)

No. 12,158.

EQUITY PLEADING—OBJECTION TO JURISDICTION—EFFECT OF MOTION TO DISMISS.
    Under the rule established by the decisions of the supreme court, that, under the federal judiciary act, objection to the jurisdiction of the court may be taken in the answer upon a denial of jurisdictional averments, where objection is so taken, a motion to dismiss, based thereon, and upon

evidence subsequently taken on the merits, whether considered as a motion or a plea in the abatement, will not be deemed a waiver by defendant of the other defenses set up in the answer.

In Equity. On motion of complainants for a decree pro confésso on the ground that a motion to dismiss (treated as a plea in abatement), filed after answer, waived answer.

Goodwin & Goodwin, for complainants.
McKune & George, for respondent Clarke.

MORROW, Circuit Judge. This is an action in equity, brought in this court on January 20, 1896, by the complainants, who are residents and citizens of Missouri, as heirs at law of one Andrew Reavis, deceased, against the respondents, who are citizens and residents of California. The bill charges that by virtue of certain fraudulent conveyances respondents have fraudulently acquired, held, and used certain real and personal property in the state of California, formerly belonging to Andrew Reavis, deceased, which property is at present held and used by the respondent Clarke. The bill prays for a decree declaring that the respondent Clarke holds this property and its rents and profits in trust for the complainants to the extent of four-fifths thereof, and that four-fifths of the said property belongs to the complainants, as heirs of the said Andrew Reavis, deceased. The bill further asks that an accounting be had, and that the respondent Clarke execute such conveyances to complainants as may vest in them, and each of them, their right and title to their interests in the property. To this bill a plea in abatement was filed on March 4, 1896, by the respondent Clarke, alleging that the interest of David M. Reavis, a citizen of the state of California, and a co-respondent in the matter in controversy, was united with, and not separate from, or adverse to, or against the interests of the complainants in the suit, and that the court had no jurisdiction to hear and determine the cause by reason of a lack of diverse citizenship of the parties to the action. To this plea the complainants interposed a demurrer on March 19, 1896. By the consent of counsel, and for reasons not disclosed in the record, the demurrer was withdrawn on April 6, 1896, and the plea was thereupon overruled by the court. On May 18, 1896, the complainants filed an amended complaint. The answer and amended answer of the respondent Clarke and the several answers of the other respondents were thereupon filed, and upon the issues joined by the filing of a replication by complainants to the answer of the respondent Clarke testimony has been taken upon the merits.

The respondent Clarke, in his answer, sets up a defense on the merits, and as a special defense the lack of diversity of citizenship of the parties necessary to give this court jurisdiction of the cause. This defense is based upon the claim, originally set up in the plea, that the interest of David M. Reavis is with the complainants; and the same charge is also made in the answer against the respondent J. J. Reavis. Upon this issue of jurisdiction, and the testimony taken upon that issue, a motion was made by the respondent Clarke on May 20, 1899, to dismiss the amended bill. On November 13, 1899,

complainants were allowed to file a replication to respondent Clarke's motion to dismiss, and on November 27, 1899, this motion was denied. 98 Fed. 145. In denying the motion to dismiss, the court decided that the evidence did not show that the real interests of D. M. Reavis were with the complainants; and, further, that there was no such proof of collusion between the complainants and D. M. Reavis as to render a rearrangement of parties necessary, according to the equities of the case. Thereupon, on December 11, 1899, complainants' counsel moved the court for a default, and for a judgment, and for a decree pro confesso against the respondent Clarke. The grounds of this motion, as stated in the notice filed by complainants' counsel, were as follows:

"That, the defendant having pleaded in abatement to the jurisdiction of the court in this cause, and having taken and published the testimony on that plea, and having insisted upon the trial of the issue thus presented, he thereby waived and withdrew his former plea in bar; that the court tried and determined the issue tendered by said plea in abatement adverse to said defendant; that said defendant has failed at or before the next rule day after the rendition of said judgment to file an answer to the merits, or obtain an extension of time or right from the court so to answer."

The motion of respondent Clarke to dismiss the bill is thus regarded as a plea in abatement by complainants' counsel. But it will be observed that this motion was based upon the special defense of a lack of jurisdiction raised by the answer. To turn this issue of the answer into a plea in abatement, and dispose of the case upon the rules governing a judgment upon that plea, would seem to be, under the circumstances of this case, an extremely technical proceeding, and, in the possible result, unjust to the respondents. Complainants, however, contend that they find authority for such a proceeding in the established rules of equity practice. Section 5 of the act of March 3, 1875 (18 Stat. 472), provides:

"That if in any suit commenced in a circuit court * * * it shall appear to the satisfaction of said circuit court at any time after such suit has been brought or removed thereto, that the parties to said suit have been improperly or collusively made or joined for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no further therein."

In the case of Hartog v. Memory, 116 U. S. 588, 590, 6 Sup. Ct. 521, 522, 29 L. Ed. 725, 726, the court, referring to this act, stated that prior to its passage the rule was that, when the citizenship necessary for the jurisdiction of the courts of the United States appeared on the face of the record, evidence to contradict the record was not admissible except under a plea in abatement in the nature of a plea to the jurisdiction, and that a plea to the merits was a waiver of such plea to the jurisdiction. The court further said that in its general scope this rule had not been altered by the act of 1875, except in so far as it provided that the court might at any time, without plea and without motion, stop all further proceedings, and dismiss the suit the moment a fraud on its jurisdiction was discovered. But the court went further, and observed that:

"Neither party has a right, however, without pleading at the proper time, and in the proper way, to introduce evidence the only purpose of which is to

make out a case for dismissal. The parties cannot call on the court to go behind the averments of citizenship in the record, except by a plea to the jurisdiction, or some other appropriate form of proceeding. The case is not to be tried by the parties as if there was a plea to the jurisdiction, when no such plea has been filed."

The complainants claim the right, under this statement of the rule of pleading governing the procedure in raising the question of jurisdiction, to treat the respondent's motion to dismiss as, in substance and effect, a plea in abatement; and, as the motion or plea has been overruled, they contend that they are entitled to a decree upon a default to answer after the court denied the motion. But in the case of Morris v. Gilmer, 129 U. S. 315, 327, 9 Sup. Ct. 289, 293, 32 L. Ed. 690, 694, the supreme court qualified its statements made in Hartog v. Memory upon the manner of raising the question of jurisdiction by the explanation that the sufficiency or regularity of the pleadings was not under consideration in that case, and any comments thereupon could only be regarded as irrelevant to the determination of the question decided in the case. It said:

"In that case, the citizenship of the parties was properly set out in the pleadings, and the case was submitted to the jury without any question being raised as to want of jurisdiction, and without the attention of the court being drawn to certain statements incidentally made in the deposition of the defendant against whom the verdict was rendered. After verdict, the latter moved for a new trial, raising upon that motion, for the first time, the question of jurisdiction. The court summarily dismissed the action upon the ground, solely, of want of jurisdiction, without affording the plaintiff any opportunity whatever to rebut or control the evidence upon the question of jurisdiction. The failure, under the peculiar circumstances disclosed in that case, to give such opportunity, was itself sufficient to justify a reversal of the order dismissing the action, and what was said that was irrelevant to the determination of that question was unnecessary to the decision, and cannot be regarded as authoritative."

And in Anderson v. Watts, 138 U. S. 695, 701, 11 Sup. Ct. 449, 450, 34 L. Ed. 1078, 1080, an express modification of the views of the supreme court upon this subject is clearly shown. Speaking through the chief justice, the court says:

"Under the act of March 3, 1875, determining the jurisdiction of circuit courts of the United States (18 Stat. 470, 472), the objection to the jurisdiction upon a denial of the averment of citizenship is not confined to a plea in abatement or a demurrer, but may be taken in the answer, and the time at which it may be raised is not restricted."

The same opinion is indicated in the case of Nashua & L. R. Corp. v. Boston & L. R. Corp., 136 U. S. 356, 373, 15 Sup. Ct. 1004, 34 L. Ed. 363. Under the authority of those last cases, respondent Clarke was entitled to raise the question of jurisdiction in his answer, and it would seem that this was so understood by counsel, when, by consent, the demurrer to the original plea in abatement was withdrawn, and the plea overruled by the court. No other explanation satisfactorily accounts for the disposition that was made of that plea. Evidence was required to support it, and evidence that in some degree went to the merits of the whole case. It was, therefore, convenient and practicable to embody this issue with the other issues of fact in the answer, and reserve the determination of this question for the hearing. In the case of State of Rhode Island v. State of Massachusetts, 14 Pet.

251, 257, 10 L. Ed. 423, 445, Chief Justice Taney, speaking for the court, declared that courts of chancery have always exercised an equitable discretion in relation to rules of pleading whenever they have found it necessary to do so for the purposes of justice. And, as illustrating the necessity for the exercise of this discretion, and the adoption of the most liberal principles of practice and pleading, the learned judge refers to the possible results arising from a too strict adherence to such rules. He says:

"According to the rules of pleading in the chancery court, if the plea is unexceptionable in its form and character, the complainant must either set it down for argument, or he must reply to it, and put in issue the facts relied on in the plea. If he elects to proceed in the manner first mentioned, and sets down the plea for argument, he then admits the truth of all the facts stated in the plea, and merely denies their sufficiency in point of law to prevent his recovery. If, on the other hand, he replies to the plea, and denies the truth of the facts therein stated, he then admits that, if the particular facts stated in the plea are true, they are then sufficient in law to bar his recovery; and, if they are proved to be true, the bill must be dismissed, without reference to the equity arising from any other facts stated in the bill. Hughes v. Blake, 6 Wheat. 472, 5 L. Ed. 303. Undoubtedly, if a plea upon argument is ruled to be sufficient in law to bar the recovery of the complainant, the court of chancery would, according to its uniform practice, allow him to amend, and to put in issue, by a proper replication, the truth of the facts stated in the plea. But in either case the controversy would turn altogether upon the facts stated in the plea, if the plea is permitted to stand. It is the strict and technical character of these rules of pleading, and the danger of injustice often arising from them, which has given rise to the equitable discretion always exercised by the court of chancery in relation to pleas. In many cases, where they are not overruled, the court will not permit them to have the full effect of a plea; and will, in some cases, save to the defendant the benefit of it at the hearing, and in others will order it to stand for an answer, as, in the judgment of the court, may best subserve the purposes of justice."

The plea in that case involved no question of jurisdiction over the parties, but the views expressed are applicable to equity pleading generally, and particularly where the enforcement of technical rules will result in manifest injustice to either party. It follows that under the present practice the motion of the respondent Clarke to dismiss the bill, whether considered as a motion or a plea in abatement, cannot, under the circumstances of this case, be deemed to have been a waiver of the other defenses set up in his answer. The motion for a decree pro confesso will therefore be denied.