### R. M. STOKES v. J. V. RILEY.

Decided May 10, 1902.

**1.—Trespass to Try Title—Leasehold Estate—Pleading.**

An action of trespass to try title may be brought for the recovery of mere possession of land, and the plaintiff therein, under a general allegation of a fee simple title, may prove a leasehold interest, although the statute requires that in trespass to try title the petition shall state the character of the title claimed. Rev. Stats., art. 5250.

**2.—Public School Lands—Lease—Railroad Reservation.**

The acts creating the Memphis & El Paso Railway reservation did not segregate the lands therein from the public domain, but merely withdrew them for the time from location by others, and such portions thereof as were not located and appropriated under and by virtue of those acts became, by the

Constitution of 1876, a part of the public free school' fund, and were subject to lease by the Land Commissioner.

**3.—Same—Lease—Recording Abstract—Evidence.**

The record in the county where the lands lay, and in compliance with article 4218v, Revised Statutes, of an abstract of a lease of the lands executed by the Commissioner, is sufficient to admit in evidence a copy of the lease over the objection that the original instrument had not been recorded in the county where the lands lay.

**4.—Trespass to Try Title—Abstract of Title—Evidence.**

Where the abstract of title filed by plaintiff with his pleadings did not contain, as required by the statute, copies of certain unrecorded instruments relied on by him, defendant's remedy was by motion before trial to have the defect cured, and not by objection on that ground to the admission in evidence of copies of such instruments. Rev. Stats., arts. 5261-5263.

**5.—Same—Mistake in Name.**

In an action of trespass to try title brought by a lessee of school lands parol evidence was admissible on plaintiff's behalf to show that the lease, though issued in the name of A. Z. Reedy, was in fact issued and delivered to A. Z. Reeder, as this was a mere matter of identity, and the evidence showed that no such person as A. Z. Reedy was known.

**6.—School Lands—Forfeiture of Lease.**

The mere failure of a lessee of State school lands to pay or tender within the prescribed time the exact amount of the annually accruing rents that may be due will not of itself abrogate the lease, nor will such effect be given to the act of the Commissioner in awarding the land to another applicant. The statute requires the lease to be canceled by a written instrument under the hand and seal of the Commissioner and to be filed with the papers relating to the lease. Rev. Stats., art. 4218v.

**7.—Same—Assignment of Lease—Assent.**

While there is no express authority for the requisite lessor's consent to an assignment of a lease of State school lands by the lessee, yet a power in the Commissioner to consent to such an assignment may be implied from his power to make and cancel leases and to re-lease the lands, and hence where a lessee assigned his lease to another and the Commissioner recognized it by accepting rentals from the assignee, the assignment was valid. Rev. Stats., arts. 3250, 4218t.

**8.—Same—Evidence—Archive—Certified Copy.**

Such an assignment of a lease of school lands, filed in the General Land Office, became an archive thereof, and could be proved by certified copy of it under the hand and seal of the Commissioner. Rev. Stats., 4218u, 2308.

Appeal from Scurry. Tried below before Hon. P. D. Sanders.

*A. M. Craig* and *Jenkins & McCartney,* for appellant.

*Beall & Beall,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee instituted this suit to recover the title and possession of the north half of section 493 and all of section 495, block 97, of lands situated in Scurry County within the old Memphis & El Paso Railway reservation and within the absolute lease district, but which prior to the times herein involved became part of the public free school lands of Texas. Appellee claims as assignee of a lease of said lands executed and delivered by the Commissioner of the General Land Office to A. Z. Reedy, April 28, 1898, for a term of five years from

December 28, 1897. Appellee also claimed the north one-fourth of said section 493 by virtue of his application to purchase the same, made March 7, 1900, and rejected by the Commissioner. Appellant claims by virtue of applications to purchase and awards to him thereon by the Commissioner of the General Land Office made June 13 and August 8, 1900, respectively. From the judgment against him appellant has prosecuted this appeal.

Appellee's petition was in the ordinary form of trespass to try title, alleging a fee simple title, and it is insisted that this averment is not supported by the lease issued to A. Z. Reedy, and that therefore appellant's objection to the lease on the ground of variance should have been sustained. We find no error in this particular. It has long been held that trespass to try title is an appropriate action for the recovery of mere possession of lands. The lease if valid created a possessory estate in the lessee and it was admissible under the general allegation of a fee simple title, notwithstanding clause 3, article 3250, Revised Statutes, requiring a plaintiff in trespass to try title to state in his petition the character of title claimed by him. See Thurber v. Conners, 57 Texas, 96; Anderson v. Anderson, 67 S. W. Rep., 404.

To the introduction of said lease in evidence it was also objected that the lands therein described had not theretofore become part of the public free school fund, and hence that the Commissioner was without authority to make the lease, the contention being that by the legislative acts creating the Memphis & El Paso reservation the lands within the boundaries thereof were segregated from the public domain and not subject to the Constitution of 1876 as construed in Baker v. Hogue, 92 Texas, 58. The lands involved in this suit are part of the void surveys made by the Houston & Texas Central Railway Company within said reservation, and being otherwise unappropriated became part of the public free school fund as hereinbefore stated, and as held by us in Hall v. Rushing, 21 Texas Civil Appeals, 631. If so, the power of the Commissioner to lease must be conceded. Besides, the reservations relied upon did not constitute an appropriation of the public lands situated therein. Said lands were merely withdrawn from location and survey by others than those for whose benefit the reservations were created, and hence in any event the land in controversy was public land and subject to lease by the Commissioner. Rev. Stats., art. 4218v; Harrington v. Blankenship, 52 S. W. Rep., 585.

The objection was also made to the introduction in evidence of copies of said lease and of the transfer thereof, and to the written receipts showing payments on said lease for the years 1898, 1899, and 1900, and to the copy of the written application of appellee to purchase said north one-fourth of section 493, on the ground that the instruments of which copies were so offered had not been recorded in Scurry County and copies thereof had not been filed with the abstract of title filed by appellee in answer to appellant's demand therefor. The original instruments mentioned were all unrecorded, save that an abstract of the lease to Reedy

had been recorded in Scurry County, as provided in article 4218s, Revised Statutes. This we think sufficient as to the lease, but for the purposes of the question under consideration the truth of the matter stated in the objections may be assumed, and the objections nevertheless, in our judgment, are not available at the time and in the manner urged on the trial. Article 5261 provides that an abstract in writing of the claim or title to the premises in question upon which an adversary relies may be demanded, and the next article provides that "in default thereof no evidence of the claim or title of such opposite parties shall be given on the trial." In the next succeeding article (5262) the requisites of such abstract are given, and among other things it is provided that copies of unrecorded instruments relied upon and alleged to be lost or destroyed shall be filed with the abstract. But in the case before us an abstract was in fact filed and "default thereof" was not made within the meaning of article 5261 so as to require of the court rejection of the title papers offered by appellee. If in fact appellee's abstract of title was deficient in the particular complained of, appellant's remedy, we think, was by motion before the trial to have the defect cured. This view is emphasized by the fact that article 5263 provides that amended abstracts of title may be filed under the same rules which authorize amendment of pleadings so far as applicable.

We also think the oral testimony to the effect that while said lease was executed in the name of A. Z. Reedy that in fact it was issued and delivered to A. Z. Reeder was admissible. In our judgment it was a mere matter of identity. The evidence authorized a finding that no such person as A. Z. Reedy was known; that the application for the lease in question was in fact made for and in behalf of A. Z. Reeder; that for him was paid the required amount of the first payment, and that the lease was in fact issued and delivered to A. Z. Reeder; that it was accepted by him and that by virtue thereof he took and retained possession of the leased lands. Under such circumstances we think there can be no question but that A. Z. Reeder acquired the full leasehold estate conveyed by the Commissioner. See Jones on Conv., secs. 226, 229; 1 Dev. on Deeds, sec. 209; Tied. on Real Prop., sec. 798. It therefore follows that the objections to the transfer of the least to appellee by A. Z. Reeder, and the evidence of lease payments made in the name of A. Z. Reeder on the ground that the lease was made to Reedy and not Reeder, were properly overruled.

The lease was of 2000 acres and the annual amount due thereon was $60, the first installment of which had been duly paid prior to the issuance and delivery of the lease in question, and we think it immaterial that subsequent payments made may have been in less amount, or may have been subsequent to sixty days after the same was due by the terms of the statute. Article 4218v provides that: "If any lessee shall fail to pay the annual rent due in advance for any year within sixty days after such rents shall become due, the Commissioner of the General Land Office may declare such lease canceled by a writing under

his hand and seal of office, which writing shall be filed with the other papers relating to such lease, and thereupon such lease shall immediately terminate, and the lands so leased shall become subject to purchase or lease under the provisions of this chapter. * * *" The power is thus given the Commissioner to cancel leases issued by him, but the manner in which this may be done is expressly pointed out. There is no pretense in the argument that the lease here involved was ever canceled by writing under the hand and seal of the Commissioner. Forfeitures are not favored in the law, and we do not think that the mere failure, if any, of the lessee within the prescribed time to pay or to tender the exact amount of rent that may be due ipso facto abrogated the estate vested by the original lease, nor do we think we can indulge with such effect the presumption arising from the fact of the said awards to appellant of the lands in controversy. A necessary implication arises from the terms of the lease land law (4218v) that the leasehold estate involved in this controversy took effect upon the payment of the first annual rental and upon the due filing of the lease for record in the clerk's office of Scurry County, both of which facts were shown, and upon the production of such lease of territory within the absolute lease district, as was the land here involved, we think prima facie title at least was shown in the lessee, and the burden was upon appellee to show not only that cause for forfeiture existed, but that in fact the Commissioner had declared the lease canceled in the manner prescribed by the statute.

Appellee's evidence of a transfer to him of the lease in the name of A. Z. Reeder was a duly certified copy, under the hand and seal of the Commissioner of the General Land Office, of an original and sufficient transfer thereof from A. Z. Reeder which had been forwarded to and filed in the General Land Office. Objection was made to this copy on the ground that such original transfer was not properly an archive of the General Land Office. If the transfer was authorized we think there can be no question but that said objection to the copy of the transfer was properly overruled, for article 4218u of the Revised Statutes, among other things, provides that the Commissioner of the General Land Office "shall file in his office all applications and other papers relating to leases, * * * which papers shall constitute a part of the records of his office." The assignment in question, the execution of which has not been contested and which was fully proven, was certainly a paper relating to the lease herein involved, and if it became an archive of the Commissioner's office under article 4218u, supra, the Commissioner was authorized by Revised Statutes, article 2308, to give a copy thereof, and such copy was receivable with like effect as would have been the original.

It is perhaps not so clear, however, that the transfer of the leasehold estate was valid. These seems to be an absence of express authority for an original lessee to assign a lease made to him by the State. If the assignment by A. Z. Reeder as an original lessee was unauthorized

and void, the assignment, of course, was not properly an archive of the General Land Office, and a certified copy thereof by the Commissioner would not in such event be admissible. Mr. Washburn, in his work on Real Property, volume 1, fifth edition, page 538, says that "It may be stated as a general if not a universal proposition that a lease is assignable unless its assignability is restricted by some covenant or condition therein to that effect. So the lessee may underlet the premises unless restrained in like manner." · But article 3250 of the Revised Statutes, title 63, on landlord and tenant, provides as follows: "If lands or tenements are rented by the landlord to any person or persons, such person or persons renting said lands or tenements shall not rent or lease said lands or tenements during the term of said lease to any other person without first obtaining the consent of the landlord, his agent or attorney."

This article of the statute has been construed by our Supreme Court in the case of Railway v. Settegast, 79 Texas, 256, as including within the spirit of its prohibition the case of an assignment, and this construction has been followed by the Court of Civil Appeals for the Fifth District in the case of Matthews v. Whittaker, 23 Southwestern Reporter, 538. It may therefore be said that the lease in question must be read as if incorporating the statute last quoted, although it may perhaps be well ·doubted whether title 63 has any application to leases of the public lands of Texas by the Commissioner. The evidence in this case tends to show that the Commissioner not only knew of the assignment of the lease to appellee but that he also accepted from appellee installments of rent due on the Reeder lease after the date of the assignment. It is not, however, entirely clear to us that the Commissioner of the General Land Office is such agent of the State as is empowered to thus consent to the assignment in question so as to bring the case within the article of the statute and decisions construing the same. The power of the Commissioner to lease, and under. given circumstances to cancel such leases and thereafter to again release the same, seems to be expressly given. From such express powers we think the power to consent to an assignment of the character here in question may be fairly implied, especially in view of the legislative recognition of "vendees" or "lessees" in the latter part of article 4218t relating to certain leases of school lands there authorized, and of the further apparent, if not real, recognition of such assignments by our Supreme Court in the case of Hazelwood v. Rogan, 95 Texas, 295. While the ruling in that case was that the preference right to purchase given a lessee by section 6 of the Act of April 19, 1901, was confined to original lessees only, yet the right of the original lessee to assign his term seems to be recognized. At least the status of the sublessees involved ·in that case was recognized, although their right to the extent asserted by them was denied. It is also true that the act of the Legislature construed in the Hazelwood case was passed subsequent to the execution of the lease here in question, but that act nowhere in express terms authorizes a sublease or an assign-

ment of a lease of public lands. If the right exists, therefore, it must be founded upon or implied from laws in force at the date of the lease in question. We therefore conclude on the whole that appellee's assignment of the lease must be upheld, and that it hence properly became an archive of the General Land Office. We feel the better satisfied to adopt this conclusion in view of the fact that the Commissioner and department of our state government charged with the care, preservation, and disposition of our public lands have so construed the powers of the Commissioner and recognized the validity of assignments of leases of public lands issued by him.

The foregoing conclusions dispose of the material questions presented by the assignments, and necessarily embody a finding that the lands involved in this suit were not subject to sale at the time of appellant's applications to purchase, and that the awards to him were therefore unavailing as against the absolute leasehold title acquired by appellee.

The judgment is affirmed.

*Affirmed.*