**FROST et al. v. STANDARD OIL CO. OF KANSAS et al.**

**No. 10390.**

Court of Civil Appeals of Texas. Galveston.

June 24, 1937.

Rehearing Denied July 22, 1937.

Scott W. Key and Kayser, Liddell, Benbow & Butler, all of Houston, for appellants.

R. E. Seagler, Otis Meredith, and Vinson, Elkins, Weems & Francis, all of Houston (Geo. E. B. Peddy and J. C. Hardy, Jr., both of Houston, of counsel), for appellees.

CODY, Justice.

This is an appeal from an order sustaining defendants' pleas of privilege, and transferring the cause from the district court of Harris to that of Montgomery county. The only question is whether the action alleged by plaintiffs comes within the exception of the fourteenth subdivision of article 1995, Revised Statutes 1925; or, as contended by plaintiffs, comes within the general provisions of the article, and should be brought at the residence of defendants,—Harris county.

The material allegations of the petition are to the effect that a certain corporation, the Eagle Oil Company, was lessee in the Madeley lease, an oil and gas lease covering a tract of 826 acres in the Conroe Oil Fields, Montgomery county; that it transferred this lease to the Humble Oil & Refining Company, excepting and retaining a certain oil payment out of one-fourth of seven-eighths of the oil and gas produced and saved, together with a one-twenty-fourth portion of all oil and gas produced and saved after the oil payment had been completed; it was further provided in the assignment that the oil should be delivered free of cost to assignor or to assignor's credit into the pipe line to which the wells should be connected (the other details of how payment for assignor's portion of the oil and gas could be required to be made, at the option of assignor, are not considered necessary to be set forth); that subsequently, on November 25, 1932, the Humble Company, in consideration of the release to it of all production on the east 63 acres of the Madeley lease, conveyed an additional portion of the production that might be made from the remainder of the land covered by the Madeley lease to the Eagle Company, and to plaintiffs Asia Oil Company, J. M. Frost, Jr., and V. W. Frost; that prior to the drilling of the well (hereafter referred to) the Eagle Company, in various fractional portions, conveyed to all of the plaintiffs all of its right, title, and interest to the production which it had retained and owned; that thereafter the Humble Company and the other two defendants caused a well to be drilled on the east 63 acres covered by the Madeley lease (being the portion of the lease in which plaintiffs had no interest in the production) and that due to specified acts of negligence by defendants the well blew out, cratered, and caved in for a distance of from 400 to 500 yards in every direction, and a vast quantity of oil and gas escaped; that all of the land west of the east 63 acres has been properly drilled and developed, and, but for the cratering of the well, plaintiffs would have realized, under their rights acquired from the Eagle Company and the Humble Company in the lease, production of the value of $300,000 more than they have realized. They sue defendants for this sum as damages for their alleged negligence in causing the well to crater.

Appellants contend their action is not for damages to land, but for the breach of the operator's personal covenant to deliver them oil and gas under the operation of the lease, their damages to be measured by the value of oil and gas they would have received except for defendants' negligence, under the contract entitling them to a fractional portion of the production under the Madeley lease. They contend that their action is similar to an action on a contract for specific performance to convey land, or damages for failure to perform such contract; that it is similar to an action for specific performance of a contract granting the exclusive right to quarry stone from a specified tract of land for a five-year period. Their view of the nature of their suit is, in our opinion, a mistaken one.

The Madeley lease invested the lessee, the Eagle Company, with a determinable fee in the oil and gas in place, covered by it. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 517, 19 S.W.(2d) 27. That which gave all the value to the lease was the profits in the form of oil and gas that it was expected would issue from the land covered by such lease, when it was operated. When the Eagle Company assigned the lease to the Humble Company to operate, it retained a right to share in the profits expected to issue from the land in consequence of the operation of the lease. While there are some differences in the nature of the interests of the operator of a lease, and that of the royalty owner, and that of the overriding royalty owner, yet they have in common the right to share, in varying proportions, in the profits issuing from the land in consequence of operating the lease. And, as was stated by Justice Hughes in United States v. Noble, 237 U.S. 74, 35 S.Ct. 532, 535, 59 L. Ed. 844, 846: "The rents and royalties were profit issuing out of the land. When they accrued, they became personal property; but rents and royalties to accrue

were a part of the estate remaining in the lessor. As such, they would pass to his heirs, and not to his personal representative" (citing authorities).

Again, in the course of the same opinion, it was stated: "It is said that the leases contemplated the payment of sums of money, equal to the agreed percentage of the market value of the minerals, and thus that the assignment was of these moneys; but the fact that rent is to be paid in money does not make it any the less a profit issuing out of the land."

In Sheffield v. Hogg, 124 Tex. 290, 77 S.W.(2d) 1021, 1028, 80 S.W.(2d) 741, our Supreme Court, speaking through Judge Greenwood, said of the Noble Case, just quoted from: "The principle underlying the determination in United States v. Noble, supra, that the mineral royalties there under discussion constituted interests in land, had been announced in that tribunal as far back as 1823, when, in an opinion by Mr. Justice Washington, the court said: 'A right to land essentially implies a right to the profits accruing from it, since, without the latter, the former can be of no value. Thus, a devise of the profits of land, or even a grant of them, will pass a right to the land itself. Shep. Touch. 93; Co.Litt. 4b. "For what," says Lord Coke, in this page, "is the land, but the profits thereof." ' " Green v. Biddle, 8 Wheat. 1, 76, 5 L.Ed. 547."

And it was held in Sheffield v. Hogg, that a royalty interest in minerals, at least for purposes of taxation, continued to be an interest in land, whether the lessor creates it by excepting from the grant or lease of minerals a certain fractional portion of the minerals, or imposes the obligation on the lessee to deliver to the lessor a fractional portion of the minerals produced and saved. The same reasoning there employed to determine that a royalty interest is land for the purpose of taxation will likewise determine it to be land for the purpose of fixing the venue of a suit for its recovery, or for damages thereto. And, if this be true of a royalty interest in minerals, it must be equally true of an overriding royalty in minerals. For, though an overriding royalty is carved out of the working interest of a lease, the owner of the overriding royalty stands in the same relation to the operator of the lease, as regards the right to receive some fractional portion of the oil and gas produced and saved, as does the owner of a royalty interest. Certainly this is true when the obligation of the operator is to deliver each of them a fractional portion of the oil and gas saved or produced, or its money equivalent. In either case, an injury to the land covered by the lease that results in diminishing the profits that issue therefrom in the form of oil and gas saved and produced is an injury to the owner of such right in virtue of such ownership. Therefore a suit for damages thereto is controlled by subdivision 14 of article 1995, Revised Statutes 1925.

The same reason for making a suit for the recovery of land an exception to the general rule that a defendant is to be sued in the county of his residence was evidently considered by the Legislature as equally applicable to suits for the recovery of damages to land. Whereas, a suit brought to enforce specific performance of a contract to convey land, or for damages for its breach, can be as conveniently tried at the residence of the defendant as in the county where the land is situated, because a written contract, as evidence, can be made available as easily in one court as another.

The injustice that could result from holding that appellants' own only a personal covenant of the operator of the lease to deliver them a portion of the oil and gas produced and saved can be easily made to appear. The well which appellants allege that appellees negligently caused to crater was drilled on the east 63 acres of the Madeley lease, being the portion of the lease in which appellants owned no interest in the production. Suppose that through some mistake in the boundary lines some stranger drilled the well that cratered. In such case, though appellants' loss would be the same, yet under their theory only the operator of the lease could recover damages from the wrongdoer; and could recover the damages, too, which appellants are now alleging they are entitled to recover.

Believing that the trial court correctly overruled appellants' general demurrers to appellees' pleas of privilege, and correctly sustained these, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.