**STANDARD OIL COMPANY OF TEXAS**
and New Idria Mining & Chemical
Company, Appellants,

v.

**J. W. MARSHALL, d/b/a Marshall Pipe
& Supply Company, et al., Appellee.**

**No. 17161.**

United States Court of Appeals
Fifth Circuit.

March 25, 1959.

J. C. Hutcheson, III, Houston, Tex., Lee Sellers, Wichita Falls, Tex., Nelson, Montgomery, Robertson & Sellers, Wichita Falls, Tex., Baker, Botts, Andrews & Shepherd, Houston, Tex., for appellant.

Henry D. Akin, Dallas, Tex., T. B. Coffield, J. M. Donald, Paul Donald, Donald & Donald, Bowie, Tex., Leachman, Gardere, Akin & Porter, Dallas, Tex., for appellees.

Before TUTTLE, JONES, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This appeal from an order dismissing the plaintiffs' suit turns on the nature of an action of trespass to try title and the characteristics of an oil payment in relation to the indispensability of payees as parties plaintiff in a suit by the mineral lessee for trespass to try title to the leasehold. In this case the joinder of absent payees as indispensable parties would oust the court of jurisdiction based on diversity of citizenship. We hold that the owner of an oil payment is not an indispensable party plaintiff in an action of trespass to try title.

I.

The dispute is over conflicting claims to the minerals under twelve acres of land in Montague County, Texas, on which a producing well is located.

Standard Oil of Texas, a Delaware corporation, and New Idria Mining and Chemical Company, a Nevada corporation, brought a diversity action in the usual form of a Texas suit for trespass to try title.[1] The plaintiffs allege that they are the owners of 7/8 of the oil, gas, and other minerals underlying the twelve acres in question; that this land is part of a larger tract in the East 1/2 of Block 1, League 12, Calhoun County School Lands, Montague County, Texas. They say that on August 29, 1956 they were in possession of the tract and engaged in drilling for oil when the defendants, J. W. Marshall and others, unlawfully entered upon the land, dispossessed the plaintiffs, and drilled a producing well. The plaintiffs ask for a judgment recognizing their title and possession. They ask also for an accounting for the oil produced, valued at $75,000 up to the time of the suit, and for damages for the conversion of the oil extracted.

The defendants claim the same twelve acres under a separate title in which the land in dispute is described as part of a tract situated in Block 6, Upper League 12, Calhoun County School Lands, Montague County, Texas.

Some time before April 27, 1956, Standard Oil of Texas obtained an oil and gas lease covering the land described as part of Block No. 1 Calhoun County School Land, Montague, Texas. Standard conveyed to C. L. Lloyd and L. F. Pitts, reserving an interest in the leasehold. April 27, 1956 Lloyd and Pitts assigned their lease to T. F. Vanderlaan. The assignment provided that besides a nominal consideration of ten dollars, Lloyd and Pitts were to receive two oil payments of $1,800,000 and $1,200,000, payable out of a fractional interest in the production reserved by the assignors.[2]

---

1. Art. 7364, Tex.Rev.Civ.Stat., et seq.; Rule 783, Tex.Rules of Civ.Proc.

2. "Assignors hereby reserve and except unto themselves, their heirs and assigns,

When the oil payments reached the agreed amount, the reserved interest was to "terminate and * * * revert to and vest in Assignee, his heirs and assigns, without further instrument or conveyance." Vanderlaan assigned to Beaver Petroleum Corporation, subject to the reservations in the previous assignment. Beaver assigned to New Idria, subject to reservations in favor of Lloyd and Pitts and subject also to a "production payment interest" in the amount of $140,250 owned by Marvin Hayutin.

The defendants moved to dismiss the suit for lack of jurisdiction, basing their motion on Rule 19(a), Federal Rules of Civil Procedure, 28 U.S.C.A.[3] They con-

an undivided forty-five (45%) per cent of the interest of Assignors (which 'interest of Assignors' is as to each lease the 'Seller's net working interest' in the production as set forth as to each such lease in Exhibits 'A' through 'J' attached hereto and made a part hereof) in the oil, gas and other minerals in and under and that may be produced and saved, from and after 7:00 A.M. February 1, 1956, from the lands and premises described in Exhibits 'A' through 'J', inclusive, including any extensions or renewals acquired by or for Assignee, in whole or in part, covering the said lands and premises, until Assignors shall have received from said interests, and not otherwise, oil, gas, and other minerals equal to when calculated at the market price when produced, less all gross production, pipe line, severance and ad valorem taxes, One Million Eight Hundred Thousand Dollars ($1,800,000.00), herein called 'primary' amount, plus an amount herein called 'secondary' amount equal to five (5%) per cent, per annum on the outstanding balances of the primary amount. Such secondary amount shall be computed monthly, and all receipts allocated to the interests hereinabove set out shall be applied first to the reduction of said secondary amount and then to credit on the primary amount. Assigns hereby further reserve and except unto themselves, their heirs and assigns, an undivided ten (10%) per cent of the interest of Assignors (which 'interest of Assignors' is as to each lease the 'Seller's net working interest' in the production as set forth as to each such in Lease in Exhibits 'A' through 'J' attached hereto and made a part hereof) in the oil, gas and other minerals in and under and that may be produced and saved, from and after 7:00 o'clock A.M. February 1, 1956, from the lands and premises described in Exhibits 'A' through 'J', inclusive, including any extensions or renewals acquired by or for Assignee, in whole or in part, covering said lands and premises until Assignors shall have received from said interests, and not otherwise, oil, gas and other minerals equal to when calcu-

lated as the marked price when produced, less all gross production, pipe line, severance and ad valorem taxes, One Million Two Hundred Thousand Dollars ($1,200,-000.00), herein called primary amount, plus an amount herein called 'secondary' amount equal to five (5%) per cent per annum on the outstanding balances of the primary amount. Such secondary amount shall be computed monthly, and all receipts allocated to the interests hereinabove set out shall be applied first to the reduction of said secondary amount and then to credit on the primary amount. Upon the payment, satisfaction and liquidation of the larger production payment of One Million Eight Hundred Thousand Dollars ($1,800,000.00) net, the unpaid balances, if any, of the smaller production payment of One Million Two Hundred Thousand Dollars ($1,200,000.00) net shall be payable out of fifty-five (55%) per cent of the interest of Assignors rather than ten (10%) per cent."

3. Subdivisions (a) and (b) of Rule 19, F.R.C.P. provide "(a) Necessary Joinder. Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff. (b) Effect of Failure to Join. When persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue and can be made parties without depriving the court of jurisdiction of the parties before it, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them as to either service of process or venue can be acquired only by their consent or voluntary appearance or if, though they are subject to its jurisdiction, their joinder would deprive the court of jurisdiction

tend that Lloyd, Pitts, and Hayutin are indispensable parties since they own oil payments carved out of the leasehold. Lloyd and Pitts are citizens of Texas. Hayutin's residence was not known at the time suit was filed.

Standard and New Idria argue that as owners of undivided interests in the oil and gas underlying the tract they have the right to sue in trespass to try title without joining Lloyd and Pitts or other owners of interests in the minerals or interests in the land. They assert that owners of oil payments would not even be proper parties to the suit because, under the law of Texas, they lack the possessory interest necessary to maintain a suit for trespass to try title.

If the plaintiffs are in a dilemma, caught between the indispensability of the payees as parties, on the one horn, and the necessity of complete diversity of citizenship, on the other horn, the suit was properly dismissed.[4]

### II.

■ The action of trespass to try title was introduced in Texas by the Act of February 5, 1840 "to abolish the senseless fictions of the English common law [action of ejectment]".[5] The action is purely statutory.[6] The proceeding accords a legal, as distinguished from an equitable remedy.[7] It is not to be confused with a suit to quiet title or a suit to establish an interest in an oil and gas lease or a suit in equity for an injunction to restrain a defendant from trespassing.[8]

Two fundamental characteristics of the action of trespass to try title are important in this case.

■■ First, although the suit is to try title, the proceeding is a possessory action[9] for recovery of land possessed by a trespasser. "To maintain the action there should be a present legal right to possession with such title as renders the possession lawful. * * * The petition of plaintiff is required by the rules of court to state that he was in possession of the premises or entitled to possession thereof, which allegation must be proved. A right of possession is thus made an essential to the cause of action in trespass to try title."[10] If the plaintiff shows possession, his own or a predecessor in title, prior to defendant's possession, and a regular chain of title connecting himself with such possession, the plaintiff establishes a prima facie title.[11] If the plaintiff's right of possession has not accrued at the time of trial, the action is premature.[12]

■ Second, it is settled in Texas that an owner of an undivided interest in land may bring suit in trespass to try title without joining the other part owners. "Proof of title to an undivided interest in a tract or survey will support

---

of the parties before it; but the judgment rendered therein does not affect the rights or liabilities of absent persons."

4. Rule 19(a); Webster v. Fall, 1924, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411; Calcote v. Texas Pacific Coal & Oil Co., 5 Cir., 1946, 157 F.2d 216, 167 A.L.R. 413, certiorari denied 1946, 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671.

5. 41–A Tex.Jur. 515. See McGrady v. Clary, Tex.Civ.App.1923, 247 S.W. 1099; Kenney v. Bailey, Tex.Civ.App.1930, 27 S.W.2d 254.

6. Permian Oil Co. v. Smith, Tex.Civ.App. 1932, 47 S.W.2d 500, reversed on other grounds 129 Tex. 413, 73 S.W.2d 490, 111 A.L.R. 1152.

7. Billups v. Gallant, Tex.Civ.App.1931, 37 S.W.2d 770, err. ref'd.

8. 41–A Tex.Jur. Sec. 4.

9. Tanner v. Imle, Tex.Civ.App.1923, 253 S.W. 665.

10. 41–A Tex.Jur. Sec. 19. Stokes v. Riley, 1902, 29 Tex.Civ.App. 373, 68 S.W. 703; Wagers v. Swilley, Tex.Civ.App.1949, 220 S.W.2d 673, err. ref'd.

11. Lewis v. Dainwood, Tex.Civ.App.1939, 130 S.W.2d 456; Lindquist v. Sanford, Tex.Civ.App.1939, 132 S.W.2d 279.

12. Engelbrecht v. Ross, Tex.Civ.App.1947, 207 S.W.2d 240. The plaintiff must be entitled to the *present* possession of the property in question. City of Mission v. Popplewell, Tex.1956, 294 S.W.2d 712; Green v. City of San Antonio, Tex.Civ. App.1955, 282 S.W.2d 769, err. ref'd.

a recovery of the entire parcel as against a stranger to the title. It follows that an action of trespass to try title may be maintained by one of several cotenants. Thus, as against a trespasser, the entire premises may be recovered by one who has taken a conveyance of a fractional interest in the property."[13] "A tenant in common may maintain an action to recover the whole of the land from one having no title." Turnbow v. Richardson, Tex.Civ.App.1941, 149 S.W.2d 616. In a suit to recover title and possession, the plaintiff is not required even to make a mortgagee a party. Galveston, H. & S. A. R. Co. v. State, Tex.Civ.App.1896, 36 S.W. 111; Booty v. O'Connor, Tex.Civ. App.1928, 13 S.W.2d 220, affirmed Brooks v. O'Connor, 120 Tex. 121, 39 S.W.2d 22.

This Court has applied these principles on several occasions in diversity suits. In Murphy v. Sun Oil Company, 5 Cir., 1936, 86 F.2d 895, 896, Sun, as owner of the mineral leasehold, brought an action in trespass to try title without joining its lessor. Defendant moved to dismiss on the ground that Sun's lessor was an indispensable party plaintiff. Joining the lessor would have destroyed diversity of the citizenship. We held:

> "As to the first point, the want of necessary parties, it is plain that appellant has overlooked the fact that this action is not in equity to remove cloud, but is at law to try title. In such an action one cotenant can sue for and recover title to the whole tract for the benefit of himself and his contenant, as against one having no title, and it is settled law in Texas that a lessor and lessee in an oil and gas lease are cotenants."

See McComb v. McCormack, 5 Cir., 1947, 159 F.2d 219.

In Humphrey v. Stanolind Oil & Gas Company, 5 Cir., 1956, 232 F.2d 925, 927, we held that fractional, nonparticipating royalty owners and warrantors of defendant's title, claiming under the same chain of title as the defendant, were not even conditionally necessary parties defendant in the sense that Rule 19(b), F.R.C.P., authorized the court to require their joinder when joinder would not oust the court of jurisdiction. This Court, reversing the district court, said:

> "[Appellee] concedes that the rule in Texas and in the Federal Court is that persons claiming an individual interest in land may sue and be sued without joining others so claiming. It nevertheless, without citation of authority or, as we think, any sound reason, contends here that Rule 19(b) authorized the action taken. It does not in its motion allege, it does not claim here, or if it does, it does not point to any reason for so claiming, that the defendants it seeks to have made parties are such persons as 'ought to be parties if complete relief is to be accorded between those already parties'.
>
> "It is apparently laboring under the impression that, for action under the rule, allegations merely that it would be desirable or useful to have as many claimants in the suit as possible * * *
>
> "We cannot agree with this view."

See Mackintosh v. Marks' Estate, 5 Cir., 1955, 225 F.2d 211 and Estes v. Shell Oil Co., 5 Cir., 1956, 234 F.2d 847.

Defendants distinguish the Murphy case on the ground that the absent party was a lessor whose ⅛ interest would not be affected by litigation involving the ⅞ leasehold. We observe, however, that a lessor is a cotenant with the lessee, claims through the same chain of title, and shares in the risk of adverse litigation affecting title and possession. Defendants distinguish Humphrey v. Stanolind on several grounds: (1) that the

---

13. 41–A Tex.Jur. Sec. 23. Dahlberg v. Holden, 1951, 150 Tex. 179, 238 S.W.2d 699, on reh., further reh. den., reversing in part 228 S.W.2d 889; Hicks v. Southwestern Settlement & Development Corp., Tex.Civ.App.1945, 188 S.W.2d 915, err. ref'd; Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App.1928, 2 S.W.2d 288, 289; Turnbow v. Richardson, Tex.Civ. App., 149 S.W.2d 616.

absent parties had no such interest as the oil payees in the instant case, but were merely lessors having no interest in the leasehold (as in Murphy); (2) that the opinion is based on Rule 19(b), not on Rule 19(a), the rule invoked in this case.

Defendants rely principally on Keegan v. Humble Oil & Refining Co., 5 Cir., 1946, 155 F.2d 971, 973. Keegan alleged ownership of an undivided one-fourth interest in certain land in Harris County, Texas. He brought a trespass to try title action against Humble. Humble moved to require joinder of *its* lessors and the holders of royalty interests claiming under the Humble lease. The motion was overruled. Keegan filed an amended complaint specifically attacking the validity of Humble's lease and asked for a decree cancelling that lease. Humble then renewed its motion that Keegan join the absent royalty holders. The district court sustained the motion, and dismissed the suit since the addition of some of the new parties would have destroyed diversity. This Court affirmed:

"We prefer, however, to rest our decision on the absence of the owners of the overriding royalty interest. This is an interest carved out of the lessees' share of the oil as distinguished from the owners' share. Wright v. Brush, 10 Cir., 115 F.2d 265. Their interests are so bound up with Humble Oil & Refining Company [the defendant] that the relief prayed for in the bill divesting Humble of its leasehold would deprive them of their right to share in the oil produced. These parties have no reversionary interest separable from their right to receive a portion of the oil produced. A decree depriving them of such interest without being heard could not be legally made, since no court can make a direct adjudication on rights of parties not before it. Gregory v. Stetson, 133 U.S. 579, 10 S.Ct. 422, 33 L.Ed. 792.

"The absent defendant Sperry [the owner of an overriding royalty, resident of Washington, D. C.] and others similarly situated were indispensable parties. Cf. Associated Oil Company v. Miller, 5 Cir., 269 F. 16; Vincent Oil Co. v. Gulf Refining Co., 5 Cir., 195 F. 434; Roos v. Texas Company, 2 Cir., [1927,] 23 F.2d 171; Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472."

■ The Keegan case would be on all fours with this case, if the same principles that apply to absent parties defendant apply also to absent parties plaintiffs. The same principles do not necessarily apply.[14] Under Texas law, a single plaintiff may bring an action of trespass to try title without joining his lessor, cotenant, surface owner, lienholder, mortgagee, or warrantor in title. All of these absent but interested parties have an ownership or direct interest in the land itself or in minerals treated as land. They are just as bound up with a judgment affecting a lessee's possession and opportunity to produce oil as the holder of the working interest. They too are affected adversely by litigation wiping out the working interest. Nevertheless, they are not necessary parties plaintiff in a statutory action limited to issues of the plaintiff's right to possession and chain of title. In such an action as trespass to try title there is more reason for

---

14. The briefs in the Keegan case recognized this distinction between the indispensability of a plaintiff and a defendant. Keegan makes the point: the defendant does not "challenge * * * his [Keegan's] right, *as the sole plaintiff*, to maintain this character of suit against an alleged trespasser without title". But, Keegan continues, "it may as well be recognized at the outset that he has such right", citing Steddum v. Kirby Lumber Co., 110 Tex. 513, 221 S.W. 920, 924; Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App.1928, 2 S.W.2d 288, 296; Murphy v. Sun Oil Co., 5 Cir., 1936, 86 F.2d 895. Humble, in effect, admitted that the plaintiff might sue without joining absent overriding royalty holders but answered: "This does not meet the issue *as to parties defendant*". See briefs filed in Keegan v. Humble Oil & Refining Co., 5 Cir., 1946, 155 F.2d 971.

dispensing with an absent owner of an oil payment than there is for dispensing with other absent owners of interests in land, since the payee has no right to possession and therefore no standing to bring the suit in the first place.

### III.

■ Walker, a leading authority, defines an oil payment as a royalty interest:

"[A] promise by the owner of the working interest under an oil and gas lease to deliver a fractional interest of the production of any or all of the minerals covered by the lease to the payee, or to pay him the monetary value thereof, until the payee has realized a certain sum from such deliveries or payments."

■ Tennant v. Dunn, 1937, 130 Tex. 285, 110 S.W.2d 53 and State v. Quintana Petroleum Co., 1939, 134 Tex. 179, 133 S.W.2d 112, 134 S.W.2d 1016, 128 A.L.R. 843 have settled the law in Texas that an oil payment is not a conveyance of oil in place, not a promise to pay money, not a contract for sale of oil after production but an incorporeal hereditament in the nature of an overriding royalty creating a present interest in land in the payee. An oil payment is not in the nature of a mortgage, since "a mortgage ordinarily creates a lien to secure the performance of an obligation in the nature of a debt". Prince Bros. Drilling Co., Inc. v. Fuhrman Petroleum Corp., Tex.Civ.App.1941, 150 S.W.2d 314, 316, writ. ref. "An oil payment has these fundamental characteristics: It is payable only out of production and there is no personal liability on the part of the assignor. The payment is not burdened with any of the operating expenses of the lease." Brown, Law of Oil and Gas Leases, Sec. 17.03 (1958).

Walker states that:

"Applying the analogy that has been made between royalties and rents or profits issuing out of land it would seem that the interest should be regarded simply as an incorporeal hereditament, and since the interest may possibly endure throughout the entire life of the determinable fee leasehold estate, it would be a determinable fee corporeal interest. Manifestly, *no present possessory interest is created in the payee, nor can it ever ripen into an interest entitling the payee to possession of the land or of the mineral estate in the future for*, so long as the lease continues, the payor-lessee has the right to exclusive possession, and if the leasehold estate terminates the oil payment interest expires with it. This is true even where the oil payment provision expressly undertakes to grant or reserve title to a portion of the minerals."

■ An oil payment is like an overriding royalty.[15] It is carved out of the lessee's share of the oil, the working interest, as distinguished from the lessor's royalty interest. It differs from an overriding royalty only in that it is of limited duration; it expires when the payee receives a fixed amount for his interest. Frost v. Standard Oil Company of Kansas, Tex.Civ.App., 107 S.W.2d 1037; Knight v. Chicago Corporation, Tex.Civ.App., 183 S.W.2d 666, affirmed 144 Tex. 98, 188 S.W.2d 564; Belgam Oil Company v. Wirt Franklin Petroleum Corporation, Tex.Civ.App., 209 S.W.2d 376; Walker, Oil Payments, 20 Tex.L. Rev. 259 (1942); Jones, Problems Presented by Joint Ownership of Oil, Gas and Other Minerals, 32 Tex.L.Rev. 696 (1954). In the Frost case the court, in

15. "It should be borne in mind that the owner of a mere royalty interest has no present or prospective possession interest in the land; that he owns no part of the minerals (as such) in place; that he does not become a cotenant in the mineral estate; that he cannot, therefore, demand or be forced into an involuntary partition of the mineral fee estate; and that his interest is merely a present vested incorporeal interest in the land." Jones, Non-Participating Royalty, 26 Tex.L.Rev. 569 (1948).

holding that the owner of an overriding royalty had an interest in land for the purpose of fixing venue, said:

> "The same reasoning there employed to determine that a royalty interest is land for the purpose of taxation will likewise determine it to be land for the purpose of fixing the venue of a suit for its recovery, or for damages thereto. And, if this be true of a royalty interest in minerals, it must be equally true of an overriding royalty in minerals. For, though an overriding royalty is carved out of the working interest of a lease, the owner of the overriding royalty stands in the same relation to the operator of the lease, as regards the right to receive some fractional portion of the oil and gas produced and saved, as does the owner of a royalty interest." [107 S.W. 2d 1039.]

In Knight v. Chicago Corporation, supra [183 S.W.2d 668], the court, in discussing the terms "undivided interest, overriding royalty or oil payments" as used in an oil and gas lease, said:

> "We think the terms undivided interest, overriding royalties and oil payments have certain well defined . meanings in Texas. All three types of interest are carved out of and constitute a part of the working interest created by an oil and gas lease. An overriding royalty is a certain percentage of the working interest which as between the lessee and the assignee is not charged with the cost of development or production. The oil payment is similar to the overriding royalty, except that the interest of the assignee ceases upon his receiving a certain amount of money or value out of oil or gas produced from a certain percentage of the working interest. The interest commonly spoken of as an 'undivided interest' is an undivided percentage of the working interest, which differs from the oil payment or the overriding royalty in that it is chargeable with its pro tanto share of the cost of development and production."

■ An undivided interest, an overriding royalty, and an oil payment are all interests in the land carved out of the working interest and therefore inevitably affected by the lessee's possession of the land and exploitation of such possession to produce oil and gas. Still, the owners of these incorporeal hereditaments have no possessory interest. For tax purposes, the sale of an oil payment is not the sale of a capital asset, but is merely the sale of the right to ordinary future income. Commissioner of Internal Revenue v. P. G. Lake, Inc., 1958, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743. And, for purposes of partition, "owners of the overriding royalties [which are similar to oil payments] do not have the right of possession or the right to share in the possession under the lease, and consequently, it is not necessary that their interests be partitioned". Belgam Oil Co. v. Wirt Franklin Petroleum Corp., Tex.Civ.App.1948, 209 S.W.2d 376, 380.

■ The oil payment payee has no right to drill, no right to the surface, no claim to the possession essential, under Texas law, for an action of trespass to try title. Under Texas law, as we see it, Lloyd, Pitts, and Hayutin, as payees, would have no standing in court to bring the suit brought in this case.

#### IV.

■ The payees' lack of a possessory interest is a major factor in this case. It is not conclusive, however, in determining whether, under the federal rules,[16] they have "an interest of such a nature that a final decree cannot be made without affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good

---

16. But see Comment, Multiparty Litigation in the Federal Courts, 71 Harv.L. Rev. 874, 996 (1958) and Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520.

conscience". Shields v. Barrow, 17 How. 129, 139, 15 L.Ed. 158.[17]

In determining what parties must be before the Court, Moore states that two matters deserve consideration:

"What type of legal interest in the property is asserted, and what type of relief is demanded. Where the interest is distinct and the relief sought does not go beyond the protection of that interest, only the parties immediately involved are indispensable, and the fact that other parties may have like interests is immaterial. For example, one tenant in common may sue in ejectment in order to recover his aliquot portion of the land without joining the other tenants in common." Moore, 3 Federal Practice, Sec. 1909, 2158.

Here, the plaintiffs seek to recover for themselves as lessees. These interests, entitling the plaintiffs to possession of the land and the right (and obligation) to engage in drilling operations, are separate and distinct from ownership of an oil payment that gives the payee no right to enter on the land to drill for oil and gas. Moreover, although as in any case the effect of a judgment may spread in widening circles, the relief sought is the protection only of the plaintiff's possession (and title) as against the defendant's.

In Petroleum Producers Company v. Reed, 1940, 135 Tex. 386, 144 S.W.2d 540, 541 the Oil Company brought an action of trespass to try title to certain vacant and unsurveyed school land in Duval County. Under Article 5344a of the Revised Civil Statutes the state must retain a ⅛ royalty in the oil and ¹⁄₁₀ royalty in the gas. In holding that the state was not a necessary party, the Texas Court pointed out that the very crux of the litigation is the possession and that this possession belongs to the lessee, the holder of the working interest. The Court said: "It is thus seen that the possession which the plaintiffs challenge is in no sense and in no respect the possession of the State, but is that of the defendants themselves. The very crux of the question which the plaintiffs propose, in their petition, to litigate is whether, as against the defendants in the suit, the plaintiffs have the right to the possession of the oil and gas leasehold estate for which they sue. Undoubtedly, the plaintiffs are privileged to litigate this question with the defendants in the absence of the State."

This action is not to attack or sustain the validity of an oil and gas lease.[18] The validity of the plaintiff's leases is not at issue. They are involved only as muniments of title, as in Murphy v. Sun Oil Co. A judgment in favor of the defendants would not have the effect of cancelling the lease.

A judgment adverse to the appellants will transfer their interests only. "The judgment in said cause [for action of trespass to try title] that plaintiff take nothing", the court said in Permian Oil Co. v. Smith, 1934, 129 Tex. 413, 73 S.W. 2d 490, 502, 111 A.L.R. 1152, rehearing denied 129 Tex. 413, 107 S.W.2d 564, 111 A.L.R. 1152, "operated to divest whatever title [the plaintiff] had in said land at that time, and to vest same in [the defendant]". In Knight v. Chicago Corp., Tex.Civ.App.1944, 183 S.W.2d 666, affirmed 144 Tex. 98, 188 S.W.2d 564, 568, the lessors reserved an oil payment out of the leased premises. They sued

---

17. The classic definition of indispensable parties is that in Shields v. Barrow, 1855, 17 How. 129, 58 U.S. 129, 15 L.Ed. 158. The Texas Supreme Court defines necessary parties in identical language: "It is universally acknowledged that necessary or indispensable parties includes all persons who have an interest in the subject-matter of the suit, of such a nature that a final decree cannot be made without either affecting their inter- ests or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and [17] good conscience." Fischer v. Rio Tire Co., Tex.Com.App., 65 S.W. 2d 751, 752, 757. See also Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W. 2d 767, 145 S.W.2d 569.

18. See Calcote v. Texas Pacific Coal & Oil Co., 5 Cir., 1946, 157 F.2d 216, 167 A.L.R. 413; Comment, 56 Yale L.J. 1088.

for trespass to try title on the ground that the lease had been terminated because of a unitization agreement that violated the terms of the lease. The lessors lost. On appeal they complained that the effect of the take nothing judgment was to destroy their right to the oil payments. The court did not go along with their argument.

"Petitioners complain of the form of this judgment. We cannot perceive how they have been injured thereby. By their pleadings they put in issue only the title to the ⅞ leasehold interest conveyed by them in the lease charged with the oil payment in their favor. The decree that they take nothing merely vests in the lessee and those holding valid interests under it that particular leasehold estate. Petitioners' right to the oil payment and royalties have not been impaired by the judgment."

If this were a suit of an equitable nature, such as a suit to cancel a lease, the defendant could urge that all persons claiming under that lease, such as overriding royalty owners and owners of oil payments, are indispensable parties. Thus, Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 742; Belt v. Texas Co., Tex. Civ.App., 175 S.W.2d 622; and Leach v. Brown, Tex.Civ.App., 251 S.W.2d 553; Frost v. Stanolind Oil & Gas Co., Tex. Civ.App.1957, 307 S.W.2d 136, err. ref'd, held that all royalty holders in a unitized group are necessary parties in a suit to obtain a judgment freeing the land from the lease.[19] But, as was pointed out in Stribling v. Polunsky, Tex. Civ.App.1946, 195 S.W.2d 554, 556: "[All] of these decisions * * * involve, in one form or another, the cancellation or avoidance of the effect of some deed or other instrument concerning the land." See also Sohio Petroleum Co. v. Jurek, Tex.Civ.App.1952, 248 S.W. 2d 294 in which the court discussed Veal v. Thomason and distinguished an ordinary action at law of trespass to try title from a suit where the plaintiff seeks relief by partition, reformation, rescission, cancellation or other equitable remedy.

In final analysis, the application of Rule 19(a) depends on the Court putting the controversy in such a posture that its final termination will be consistent with good conscience. If a case may be decided without prejudice to the rights of absent parties "a court of equity will strain hard to reach that result" rather than dismiss the suit for lack of diversity. Bourdieu v. Pacific Western Oil Co., 299 U.S. 65, 70, 57 S.Ct. 51, 53, 81 L.Ed. 42. In Hudson v. Newell, 5 Cir., 1949, 172 F.2d 848, 850, we stated the guiding principles as follows:

"(1) Where federal jurisdiction rests on diversity of citizenship the diversity must be complete, and to see whether it is, all parties will be aligned as plaintiffs or defendants according to their real interests; (2) A court cannot adjudicate the rights of persons who are not parties before it; they will be brought in if possible and if they will not destroy diversity. (3) If diversity will be thereby destroyed the court will not require them to be brought in, but will enquire if there is any relief it can properly give without them; if there is, it will give it without prejudice to the rights of the absent; if none can be given the suit will be dismissed. In the latter event the dismissal is not for want of federal jurisdiction, but for lack of indispensable parties. See Federal Rules of Civil Procedure No. 19, 28 U.S.C.A."

See also Mackintosh v. Marks' Estate, 5 Cir., 1955, 225 F.2d 211.

Whatever the indispensability of owners of oil payments in some proceedings, it seems to us that the joinder of the payees as parties plaintiff is not

---

19. See Dedman, Indispensable Parties in Pooling Cases, 9 S.W.L.J. 27 (1955) and Masterson, Indispensable Parties in Oil and Gas Litigation, 6th Ann.Inst. on Oil and Gas Law and Taxation, 139 (Southwestern Legal Foundation 1955).

required in order to accord relief between the present plaintiffs and the defendants on the issues raised by an action of trespass to try title: recovery of possession by the plaintiffs showing previous possession and prior title.

If the final decree is favorable to the plaintiffs, any benefits in terms of oil production will inure to the payee. If the decree is unfavorable, the payees are not bound by a decree in a suit to which they are not parties. It is true that the payees, having no reversionary interest, may be adversely affected. However, the burden of the covenant runs with the land; the assignee of the lease becomes obligated to perform the covenant by the privity of the estate established by the assignment even without express assumption. Similarly, the effect of a judgment for the defendants would be to transfer to them such title as the plaintiffs had; burdened, therefore, with the interests of the payees in the oil payments, to the extent such interests are valid and effective. If the payees should file suit for an accounting for their interest in the production, that suit could be defeated, as can this one, by the defendants showing that their claim of title is superior to the plaintiff's chain of title. If the defendants wish to avoid multiple litigation, they may file a cross-complaint, naming as cross-defendants all persons who claim under plaintiffs' title. Rule 785, Texas Rules of Civil Procedure, expressly permits the holder of a nonpossessory interest to be joined in an action of trespass to try title.

From a practical point of view, multiple litigation in a *situation of this kind* may be less of a burden than imposing on the royalty market, characterized by highly subdivided overriding royalties, the burden of joining all owners of fractional interests in oil payments and overriding royalties when an action is brought to recover possession and try title. Weighing the conflicting elements, we hold that the interests of justice are best served by holding that a single owner of an interest in land, claiming possession to the whole or a part of the leasehold, may bring suit for trespass to try title, without the necessity of joining, *as parties plaintiff*, the owners of oil payments having only a nonpossessory incorporeal interest in the land.

Reversed and remanded.